BAUER, Circuit Judge.
The defendant-appellant, Billy Coving-ton, robbed a bank in Lansing, Illinois. He was arrested and pleaded guilty to the crimes of bank robbery (“Count 1”) and brandishing a firearm during a bank robbery (“Count 2”) under 18 U.S.C. § 2113(a) and 18 U.S.C. § 924(c)(1)(A). On July 14, 2011, the district court sentenced Covington to 36 months in prison on Count 1 and a consecutive sentence of 84 months on Count 2. Covington appeals, arguing that during the sentencing hearing, the district court denied him his right of allocution under Federal Rule of Criminal Procedure 32. We disagree and affirm the sentence.
I. BACKGROUND
Because Covington’s challenge turns only on the procedures employed at the sentencing hearing, we confine our discussion of the facts to the hearing only. The district court began the proceeding by hearing arguments in favor of each party’s proposed sentence. Then, pursuant to Federal Rule of Criminal Procedure 32(i)(4)(A), the court invited the defendant to speak on his own behalf, and Covington obliged. Although the exact amount of time Covington spoke is unknown, the transcript indicates a 6-page span in which he spoke at length on a variety of topics, including his troubled childhood, his relationships with various family members, and his time in the U.S. military.
Eventually, in the midst of Covington’s detailed discussion of his military experience, the district court interjected:
The Court: Mr. Covington.
Covington: Yes.
The Court: Maybe you ought to start someplace else.
Covington: Pardon me?
The Court: Why did you go into the bank, Mr. Covington?
Covington: Okay. I am going to tell you.
The Court: No, tell me right now.
Covington: Okay. I went into the bank to kill myself.
Covington then proceeded to speak further, but he brought the topic back to his war experience. Eventually, the court asked another question:
Covington: I get tired sometime[s]. Let me make this real short, Judge Zagel.
The Court: Let me ask you another question.
Covington: I get tired.
The Court: Let me ask you another question. Are the flashbacks the reason that you use drugs?
Covington then briefly discussed his drug use and several suicide attempts. When Covington finished, the court concluded by thanking him and then inviting his wife to speak on his behalf.
At the conclusion of Covington’s wife’s appearance, the court announced that it was ready to hand down a sentence. In reaching the sentence, the court explained that it was motivated in part by its belief that Covington was a danger to himself and to others. The court believed his suicidal tendencies prevented him from soberly assessing the risk he posed to others in general and in particular when he robbed the bank. It also expressed concern over Covington’s difficulty in sticking with a course of mental health treatment. The court ultimately announced sentences of 36 months on Count 1 and 84 months on Count 2 to run consecutively. It also rec- *910 omraended drug rehabilitation and mental health treatment programs.
II. DISCUSSION
Covington’s sole argument is that the district court denied him his right of allo-cution at his sentencing hearing. He failed to object on this ground in the district court and raises the argument for the first time on appeal. We therefore review his claim only for plain error. See United States v. Olano, 507 U.S. 725, 731-32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); United States v. Luepke, 495 F.3d 443, 448 (7th Cir.2007); United States v. Williams, 258 F.3d 669, 672 (7th Cir.2001). To succeed under the plain error standard, Covington must show (1) that the district court erred; (2) that the error was plain; and (3) that the error affected his substantial rights. Luepke, 495 F.3d at 448. If he meets these three criteria, we may exercise our discretion to remand for resentencing if the error “ ‘seriously affects the fairness, integrity, or public reputation of judicial proceedings.’ ” Id. (quoting Olano, 507 U.S. at 732, 113 S.Ct. 1770).
A defendant’s right of allocution does not stem from the Constitution, but this court has nevertheless recognized it as an important right that district courts must construe liberally. See United States v. Barnes, 948 F.2d 325, 328-30 (7th Cir.1991). It is codified under Federal Rule of Criminal Procedure 32(i)(4)(A)(ii), which states that at sentencing, the court must “address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence.” As we have noted, however, the right is not without its limitations. See United States v. Alden, 527 F.3d 653, 663 (7th Cir.2008) (collecting cases describing limits on the right to allocute).
We acknowledge that the district court interrupted Covington in order to ask him a question. But an interruption by the court does not in itself amount to a denial of a defendant’s right of allocution. This is especially true in this case, where the court’s interruption was an attempt to refocus the defendant’s statements on mitigation rather than to terminate the allocution completely. For example, Covington went into great detail about his various altercations with his father, and at one point he recounted a confusing story in which he asked a blind man not to say his name as his father was walking nearby. Although the court interjected with questions, it permitted Covington to answer them fully and even permitted him to veer away from the original subject matter of those questions. While Covington was free to speak about whatever he wished, the court’s interruption was a reasonable attempt to get him back on track and thus a reasonable limitation on his right of allocution.[1]
Even if we were to find that the court’s interruption was plain error, that error would not affect Covington’s substantial rights. An error affects substantial rights when that error prejudices the defendant. Luepke, 495 F.3d at 450-51. This court will presume prejudice “when there is any possibility that the defendant would have received a lesser sentence had the district court heard from him before imposing sentence.” Id. at 451. Here, as previously noted, the district court did hear from Covington on a variety of differ *911 ent topics. And Covington argues that if he had not been interrupted, he would have offered details about his traumatic combat experiences, his substance abuse problems, and his impaired mental health. But he had already touched on all these topics and more during his allocution. He could have spoken further about them, but this would not have afforded him a lesser sentence. The court explained that its rationale for the sentence had nothing to do with retribution or deterrence and everything to do with incapacitation. It is precisely because Covington suffers from severe mental health and substance abuse problems that the court determined he was a danger to himself and others. These problems also led the district court to recommend supervised treatment programs. It is difficult to see how more details regarding the severity of Covington’s mental health problems could have convinced the court that the goals of incapacitation and rehabilitation would be better served with a lesser sentence.
Covington urges us to view this case as similar to United States v. Li, 115 F.3d 125, 130-34 (2d Cir.1997). In Li, the district court continuously interrupted the non-English-speaking defendant’s allocution with “increasing impatience.” Id. at 133. The defendant went on for only two pages of transcript before the court terminated the allocution completely, and the court’s aggressive tone suggested that the defendant may have been too intimidated and confused to “speak meaningfully of the factors that she legitimately thought relevant to the mitigation of her sentence.” Id. at 134. Specifically, the judge in that case believed that the defendant’s claim of mental health problems was a ploy to gain sympathy. Id. at 131.
This case presents a vastly different interaction between the court and the defendant. Here, Covington was able to speak for at least six pages of transcript before the court’s interruption. And as we have noted, that interruption was not intended to completely terminate the allocution or to intimidate Covington. Instead, the court posed questions designed to elicit information more relevant to mitigation. The court also made clear that it appreciated the severity of Covington’s mental health and drug abuse problems and the value of his service in the military. In short, nothing here suggests that the right to allocution was “reduced to a formality.” United States v. Barnes, 948 F.2d 325, 331 (7th Cir.1991).
III. CONCLUSION
For the foregoing reason, the district court’s sentence is Affikmed.

. The dissent takes the position that the majority opinion curtails the right of allocution. It does not. Only if one equates the right of allocution with the right to filibuster, can such a charge be levied. A trial judge listening to rambling discussions that seem to lead nowhere has a right to steer the defendant to some connection between a cradle-to-the-grave biographical sketch and a statement that relates to the matter at hand. The record shows that the defendant was given a right of allocution and used it fully.