(Slip Opinion) OCTOBER TERM, 2020 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## GREER *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 19–8709. Argued April 20, 2021—Decided June 14, 2021*

In *Rehaif* v. *United States*, 588 U. S. \_\_\_, the Court clarified the *mens rea* requirement for firearms-possession offenses under 18 U. S. C. §922(g). After *Rehaif*, the Government in a felon-in-possession case must prove not only that the defendant knew he possessed a firearm, but also that he knew he was a felon when he possessed the firearm. See 588 U. S., at \_\_\_. Prior to *Rehaif*, Gregory Greer and Michael Gary were separately convicted of being felons in possession of a firearm in violation of §922(g)(1). Greer's conviction resulted from a jury trial during which Greer did not request—and the District Court did not give—a jury instruction requiring the jury to find that Greer knew he was a felon when he possessed the firearm. Gary pled guilty to two counts of being a felon in possession of a firearm. During Gary's plea colloquy, the District Court did not advise Gary that, if he went to trial, a jury would have to find that he knew he was a felon when he possessed the firearms. On appeal, both Greer and Gary raised new *mens rea* arguments based on *Rehaif*. Greer requested a new trial based on the District Court's failure to instruct the jury that Greer had to know he was a felon to be found guilty. Applying plain-error review, the Eleventh Circuit rejected that argument. Gary argued that his guilty plea must be vacated because the District Court failed to advise him that, if he went to trial, a jury would have to find that he knew he was a felon. The Fourth Circuit agreed with Gary, holding that the failure to advise him of that *mens rea* element was a structural error that required automatic reversal even though Gary had not raised the argument in the District Court.

——————

*Together with No. 20–444, *United States* v. *Gary,* on certiorari to the United States Court of Appeals for the Fourth Circuit.

*Held*: In felon-in-possession cases, a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon.

Under Rule 51(b) of the Federal Rules of Criminal Procedure, a defendant who has "an opportunity to object" to an alleged error and fails to do so forfeits the claim of error. If, as with Greer and Gary here, a defendant later raises the forfeited claim on appeal, Rule 52(b)'s plain-error standard applies. See *Puckett* v. *United States*, 556 U. S. 129, 135. To establish eligibility for plain-error relief, a defendant must show (i) that there was an error, (ii) that the error was plain, and (iii) that the error affects "substantial rights," *i.e.,* that there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Rosales-Mireles* v. *United States*, 585 U. S. ___, ___. If the defendant satisfies those three prongs, an appellate court may grant relief only if it also concludes that the error had a serious effect on "the fairness, integrity or public reputation of judicial proceedings." *Ibid.* (internal quotation marks omitted).

Here, it is undisputed that *Rehaif* errors occurred during Greer's and Gary's district court proceedings and that the errors were plain. To satisfy the "substantial rights" prong, Greer must show that, if the District Court had correctly instructed the jury on the *mens rea* element of a felon-in-possession offense, there is a "reasonable probability" that he would have been acquitted. Gary must show that, if the District Court had correctly advised him of the *mens rea* element of the offense, there is a "reasonable probability" that he would not have pled guilty.

Greer and Gary have not carried that burden. Both had been convicted of multiple felonies prior to their respective felon-in-possession offenses. Those prior convictions are substantial evidence that they knew they were felons. And neither defendant argued or made a representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon when he possessed a firearm.

Greer's and Gary's counterarguments are unpersuasive. Greer primarily argues that an appellate court conducting plain-error review of a *Rehaif* instructional error may examine only the trial record, and may not consider, for example, information about a defendant's prior convictions contained in a pre-sentence report. But the undisputed fact that Greer was a felon is in the trial record. In any event, that argument contravenes both logic and precedent. See, *e.g., United States* v. *Vonn,* 535 U. S. 55, 58–59.

Gary argues that he is exempt from ordinary plain-error review under Rule 52(b) for one of two alternative reasons. Gary first argues

Syllabus

that a narrow "futility" exception to Rule 52(b) applies because it would have been futile to object to the omission of the *mens rea* element from his plea colloquy given the pre-*Rehaif* state of the law. For that reason, Gary argues that his claim should be governed by the more lenient harmless-error standard of Rule 52(a) rather than the more exacting plain-error standard of Rule 52(b). Gary's proposed futility exception lacks any support in the text of the Federal Rules of Criminal Procedure or in this Court's precedents, which distinguish between harmless-error and plain-error review based on preservation. See, *e.g., Johnson* v. *United States,* 520 U. S. 461. Gary also asserts that *Rehaif* errors are "structural" and require automatic vacatur in every case without regard to whether a defendant can otherwise satisfy the plain-error test. The Court disagrees. *Rehaif* errors fit comfortably within the "general rule" that "a constitutional error does not automatically require reversal of a conviction." *Arizona* v. *Fulminante*, 499 U. S. 279, 306. Pp. 3–11.

No. 19–8709, 798 Fed. Appx. 483, affirmed; No. 20–444, 954 F. 3d 194, reversed.

KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, BREYER, ALITO, KAGAN, GORSUCH, and BARRETT, JJ., joined. SOTOMAYOR, J., filed an opinion, concurring in part and dissenting in part.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

Nos. 19–8709 and 20–444

————

## GREGORY GREER, PETITIONER
19–8709                *v.*
### UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT

## UNITED STATES, PETITIONER
20–444                *v.*
### MICHAEL ANDREW GARY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[June 14, 2021]

JUSTICE KAVANAUGH delivered the opinion of the Court.

Federal law prohibits the possession of firearms by certain categories of individuals, including by those who have been convicted of a crime punishable by more than one year in prison. See 18 U. S. C. §§922(g), 924(a)(2). In *Rehaif* v. *United States*, 588 U. S. ___ (2019), this Court clarified the *mens rea* requirement for firearms-possession offenses, including the felon-in-possession offense. In felon-in-possession cases after *Rehaif*, the Government must prove not only that the defendant knew he possessed a firearm, but also that *he knew he was a felon* when he possessed the firearm. See *id.*, at ___ (slip op., at 11).

As many courts have recognized and as common sense

suggests, individuals who are convicted felons ordinarily know that they are convicted felons. That simple point turns out to be important in the two cases before us.

Before this Court decided *Rehaif*, Gregory Greer and Michael Gary were separately convicted of felon-in-possession offenses.

Greer's case arose when police officers began talking to him in a hotel hallway. The officers suspected that Greer was involved in a prostitution ring. Greer ran from the officers and led them on a chase down a stairwell. The officers found a gun discarded in the stairwell and caught Greer shortly thereafter. Greer was wearing an empty holster clipped inside his waistband. At the time of the incident, Greer was a convicted felon. The Federal Government charged him in federal court with being a felon in possession of a firearm, and the case went to trial. Greer's defense was that he had never possessed the gun that the police found in the stairwell. Greer did not request—and the District Court did not give—a jury instruction requiring the jury to find that Greer knew he was a felon when he possessed the firearm. The jury found Greer guilty.

Gary's case arose out of two separate encounters with police. Both times, officers found Gary with a firearm. At the time of the incidents, Gary was a convicted felon. The Federal Government charged him in federal court with two counts of being a felon in possession of a firearm. Gary pled guilty. During the plea colloquy, the District Court did not advise Gary that, if he went to trial, a jury would have to find that he knew he was a felon when he possessed the firearms.

After Greer's trial and Gary's plea, this Court decided *Rehaif*. Based on *Rehaif*, both Greer and Gary raised new *mens rea* arguments on appeal. Greer argued that he was entitled to a new trial because the District Court failed to instruct the jury that he had to know he was a felon. Gary

similarly argued that his guilty plea must be vacated because the District Court failed to advise him during the plea colloquy that, if he went to trial, a jury would have to find that he knew he was a felon. The Eleventh Circuit rejected Greer's argument, 798 Fed. Appx. 483 (2020), while the Fourth Circuit agreed with Gary's argument, 954 F. 3d 194 (2020). We granted certiorari in both cases. See 592 U. S. \_\_\_ (2021).

\*     \*     \*

The question for this Court is whether Greer and Gary are entitled to plain-error relief for their unpreserved *Rehaif* claims. We conclude that they are not. We therefore affirm the judgment of the Eleventh Circuit and reverse the judgment of the Fourth Circuit.

Under Rule 51(b) of the Federal Rules of Criminal Procedure, a defendant can preserve a claim of error "by informing the court" of the claimed error when the relevant "court ruling or order is made or sought." If the defendant has "an opportunity to object" and fails to do so, he forfeits the claim of error. *Ibid.* If the defendant later raises the forfeited claim on appeal, Rule 52(b)'s plain-error standard applies. See *Puckett* v. *United States*, 556 U. S. 129, 135 (2009).

Here, both defendants forfeited their *mens rea* claims by failing to properly preserve them under Rule 51(b). We therefore conduct plain-error review under Rule 52(b).

Rule 52(b) provides: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." "Rule 52(b) is permissive, not mandatory." *United States* v. *Olano*, 507 U. S. 725, 735 (1993). To establish eligibility for plain-error relief, a defendant must satisfy three threshold requirements. See *Rosales-Mireles* v. *United States*, 585 U. S. \_\_\_, \_\_\_–\_\_\_ (2018) (slip op., at 3–4). *First*, there must be an error. *Second*, the error must be plain. *Third*, the error must affect "substantial rights," which generally means that there

must be "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Id*., at ___ (slip op., at 4) (internal quotation marks omitted). If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on "the fairness, integrity or public reputation of judicial proceedings." *Ibid.* (internal quotation marks omitted); see also *Olano*, 507 U. S., at 735–737.

The defendant has "the burden of establishing entitlement to relief for plain error." *United States* v. *Dominguez Benitez*, 542 U. S. 74, 82 (2004). That means that the defendant has the burden of establishing each of the four requirements for plain-error relief. Satisfying all four prongs of the plain-error test "is difficult." *Puckett*, 556 U. S., at 135.

In the two cases before us, all agree that *Rehaif* errors occurred during both defendants' district court proceedings and that the errors were plain, thus satisfying the first two prongs of the plain-error test. We address the third prong: whether the *Rehaif* errors affected the defendants' "substantial rights." Greer has the burden of showing that, if the District Court had correctly instructed the jury on the *mens rea* element of a felon-in-possession offense, there is a "reasonable probability" that he would have been acquitted. *Dominguez Benitez*, 542 U. S., at 83. And Gary has the burden of showing that, if the District Court had correctly advised him of the *mens rea* element of the offense, there is a "reasonable probability" that he would not have pled guilty. *Ibid.*

In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. "Felony status is simply not the kind of thing that one forgets." 963

F. 3d 420, 423 (CA4 2020) (Wilkinson, J., concurring in de-
nial of reh'g en banc). That simple truth is not lost upon
juries. Thus, absent a reason to conclude otherwise, a jury
will usually find that a defendant *knew* he was a felon based
on the fact that he *was* a felon. A defendant considering
whether to plead guilty would recognize as much and would
likely factor that reality into the decision to plead guilty. In
short, if a defendant was in fact a felon, it will be difficult
for him to carry the burden on plain-error review of showing
a "reasonable probability" that, but for the *Rehaif* error, the
outcome of the district court proceedings would have been
different.

Of course, there may be cases in which a defendant who
is a felon can make an adequate showing on appeal that he
would have presented evidence in the district court that he
did not in fact know he was a felon when he possessed fire-
arms. See Fed. Rule App. Proc. 10(e). Indeed, at oral argu-
ment, the Government conceded that there are circum-
stances in which a defendant might make such a showing.
See Tr. of Oral Arg. in No. 19–8709, pp. 42–43, 50–51, 61–
62; Tr. of Oral Arg. in No. 20–444, pp. 16–17. But if a de-
fendant does not make such an argument or representation
on appeal, the appellate court will have no reason to believe
that the defendant would have presented such evidence to
a jury, and thus no basis to conclude that there is a "reason-
able probability" that the outcome would have been differ-
ent absent the *Rehaif* error.

Here, Greer and Gary have not carried the burden of
showing that the *Rehaif* errors in their respective cases af-
fected their substantial rights. Before their respective
felon-in-possession offenses, both Greer and Gary had been
convicted of multiple felonies. Those prior convictions are
substantial evidence that they knew they were felons. Nei-
ther defendant has ever disputed the fact of their prior con-
victions. At trial, Greer stipulated to the fact that he was a
felon. And Gary admitted that he was a felon when he pled

guilty. Importantly, on appeal, neither Greer nor Gary has argued or made a representation that they would have presented evidence at trial that they did not in fact know they were felons when they possessed firearms. Therefore, Greer cannot show that, but for the *Rehaif* error in the jury instructions, there is a reasonable probability that a jury would have acquitted him. And Gary likewise cannot show that, but for the *Rehaif* error during the plea colloquy, there is a reasonable probability that he would have gone to trial rather than plead guilty.

In sum, as the Fifth Circuit aptly stated, demonstrating prejudice under *Rehaif* "will be difficult for most convicted felons for one simple reason: Convicted felons typically know they're convicted felons." *United States* v. *Lavalais*, 960 F. 3d 180, 184 (2020). So it is here.

In response, Greer and Gary advance several arguments, none of which is persuasive.

Greer's primary argument is that an appellate court conducting plain-error review of a *Rehaif* instructional error may examine only the trial record, not the entire record. Thus, as relevant here, Greer contends that an appellate court may not consider information about a defendant's prior convictions contained in a pre-sentence report. But the undisputed fact that Greer was a felon is in the trial record. Indeed, Greer stipulated to that fact. See *Old Chief* v. *United States*, 519 U. S. 172 (1997). And importantly, Greer has never argued or made any representation on appeal—either to the Eleventh Circuit or to this Court—that he did not know he was a felon when he possessed a firearm. We therefore need not look to the pre-sentence report to resolve the plain-error question in this case.

In any event, Greer's argument that plain-error review must focus exclusively on the trial record contravenes both logic and precedent. Recall that the question at the substantial-rights prong of plain-error review is whether there is a reasonable probability that, if the jury had been

given the proper *mens rea* instruction, Greer would have been acquitted. Greer asks us to assume a scenario where the proper instruction was given, but where the Government did not introduce additional evidence to prove that Greer knew he was a felon. That is not a realistic scenario.

Greer's argument is also inconsistent with precedent. This Court has repeatedly stated that an appellate court conducting plain-error review may consider the *entire* record—not just the record from the *particular proceeding* where the error occurred. See, *e.g.*, *United States* v. *Vonn*, 535 U. S. 55, 58–59, 74–75 (2002); see also *Puckett*, 556 U. S., at 142–143; *Dominguez Benitez*, 542 U. S., at 84–85; *United States* v. *Cotton*, 535 U. S. 625, 632–633, and n. 3 (2002). Therefore, when an appellate court conducts plain-error review of a *Rehaif* instructional error, the court can examine relevant and reliable information from the entire record—including information contained in a pre-sentence report.

To be sure, if a defendant believes that particular information in the record is irrelevant or unreliable, she may urge the appellate court to discount that information. But concerns about relevance and reliability should be addressed through case-by-case adjudication rather than through a categorical bar against considering evidence outside the trial record.

For his part, Gary argues that he is exempt from ordinary plain-error review for one of two alternative reasons.

*First*, Gary contends that his unpreserved *Rehaif* claim is not subject to ordinary plain-error review because his claim falls within a narrow "futility" exception to Rule 52(b). Gary notes that, at the time of his guilty plea, every Court of Appeals to consider the issue had held that knowledge of one's felon status was not an element of a felon-in-possession offense. Given that uniform wall of precedent, he says that it would have been futile for him to contemporaneously object to the omission of that element from his

plea colloquy. For that reason, he argues that his claim should be governed by the more lenient harmless-error standard of Rule 52(a) rather than the more exacting plain-error standard of Rule 52(b).

The problem for Gary is that his proposed futility exception lacks any support in the text of the Federal Rules of Criminal Procedure or in this Court's precedents.

Start with Rule 52, which addresses the standards for harmless-error and plain-error review in federal criminal appeals. Rule 52 is divided into two subsections. Rule 52(a) deals with harmless error. Rule 52(b) addresses plain error. Rule 52(b) specifically addresses unpreserved errors, while Rule 52(a) makes no mention of such errors. Thus, Rule 52(a) and Rule 52(b) together indicate that unpreserved errors must be analyzed for plain error under Rule 52(b).

Consider also Rule 51, which provides that a party's failure to make a contemporaneous objection does not prejudice the party if he did "not have an opportunity" to raise the objection. Rule 51's focus on a party's *opportunity* to object—rather than a party's likelihood of *prevailing* on the objection—also undercuts Gary's proposed futility exception.

Consistent with the text of Rules 51 and 52, this Court's precedents have long drawn a bright line between harmless-error and plain-error review based on preservation. See *Olano*, 507 U. S., at 731. In *Johnson* v. *United States*, 520 U. S. 461 (1997), for example, the Court applied plain-error review to a claim that was the subject of an 11 to 1 split in authority among the Circuits, with only one Court of Appeals accepting the defendant's position. The "near-uniform precedent both from this Court and from the Courts of Appeals," *id.*, at 467–468, did not affect the application of Rule 52(b). All that mattered was that the defendant had failed to raise a contemporaneous objection. See *id.*, at 465–466.

In sum, both the Federal Rules and this Court's precedents confirm that unpreserved *Rehaif* claims are subject to plain-error review under Rule 52(b).

*Second*, Gary asserts that *Rehaif* errors (at least when they occur during a plea proceeding) are "structural" and require automatic vacatur in *every* case without regard to whether a defendant can otherwise satisfy the plain-error test.

As this Court has repeatedly made clear, however, the "general rule" is that "a constitutional error does not automatically require reversal of a conviction." *Arizona* v. *Fulminante*, 499 U. S. 279, 306 (1991). Only in a "very limited class of cases" has the Court concluded that an error is structural, and "thus subject to automatic reversal" on appeal. *Neder* v. *United States*, 527 U. S. 1, 8 (1999) (internal quotation marks omitted).

Structural errors are errors that affect the "entire conduct of the [proceeding] from beginning to end." *Fulminante*, 499 U. S., at 309. The "highly exceptional" category of structural errors includes, for example, the "denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt." *United States* v. *Davila*, 569 U. S. 597, 611 (2013).

By contrast, discrete defects in the criminal process—such as the omission of a single element from jury instructions or the omission of a required warning from a Rule 11 plea colloquy—are not structural because they do not "*necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, 527 U. S., at 9 (omission of element from jury instructions); see also *Dominguez Benitez*, 542 U. S., at 81, n. 6 (omission of Rule 11 warning from plea colloquy).

As the Court's precedents make clear, the omission of a single element from jury instructions is not structural. See,

*e.g.*, *Neder*, 527 U. S., at 7–10. A *Rehaif* error in jury in-
structions is therefore not structural. And it follows that a
*Rehaif* error in a plea colloquy is likewise not structural.
The omission of that *mens rea* element from a plea collo-
quy—like the omission of that *mens rea* element from jury
instructions—does not affect the entire framework within
which the proceeding occurs. See 527 U. S., at 8. And un-
like the errors that this Court has found structural, the
omission of a single element from a plea colloquy does not
"deprive defendants of basic protections without which a
criminal [proceeding] cannot reliably serve its function as a
vehicle for determination of guilt or innocence." *Id.*, at 8–9
(internal quotation marks omitted). In short, *Rehaif* errors
fit comfortably within the "general rule" that "a constitu-
tional error does not automatically require reversal of a con-
viction." *Fulminante*, 499 U. S., at 306. Rather, a defend-
ant such as Gary must satisfy the ordinary plain-error test.

\*     \*     \*

The bottom line of these two cases is straightforward. In
felon-in-possession cases, a *Rehaif* error is not a basis for
plain-error relief unless the defendant first makes a suffi-
cient argument or representation on appeal that he would
have presented evidence at trial that he did not in fact know
he was a felon. When a defendant advances such an argu-
ment or representation on appeal, the court must determine
whether the defendant has carried the burden of showing a
"reasonable probability" that the outcome of the district
court proceeding would have been different. Because Greer
and Gary did not make any such argument or representa-
tion on appeal in these cases, they have not satisfied the
plain-error test.\*

—————

\*The partial dissent contends that we should vacate and remand for
the Fourth Circuit to consider whether Gary can "make a case-specific
showing" that the outcome of his plea proceedings would have been dif-
ferent absent the *Rehaif* error. *Post,* at 7. But Gary already had that

We affirm the judgment of the U. S. Court of Appeals for the Eleventh Circuit, and we reverse the judgment of the U. S. Court of Appeals for the Fourth Circuit.

*It is so ordered.*

––––––––––

opportunity before the Fourth Circuit and did not make such a showing. Before the Fourth Circuit, Gary did not claim that he did not know he was a felon or suggest that he would not have pled guilty absent the *Rehaif* error. He argued only that a *Rehaif* error during a plea colloquy is a structural error that requires automatic reversal *even if* there is "overwhelming evidence that the defendant would have pleaded guilty regardless." Supp. Brief for Appellant in No. 18–4578 (CA4), p. 10 (internal quotation marks omitted).

# SUPREME COURT OF THE UNITED STATES

---

Nos. 19–8709 and 20–444

---

### GREGORY GREER, PETITIONER
19–8709            *v.*
### UNITED STATES

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH CIRCUIT*

### UNITED STATES, PETITIONER
20–444            *v.*
### MICHAEL ANDREW GARY

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT*

[June 14, 2021]

JUSTICE SOTOMAYOR, concurring as to No. 19–8709, and concurring in part, dissenting in part, and dissenting from the judgment as to No. 20–444.

For years, all 12 Courts of Appeals with criminal jurisdiction agreed that a defendant need not know he is a felon to be guilty of being a felon in possession of a firearm under 18 U. S. C. §§922(g)(1) and 924(a)(2). This Court came to the opposite conclusion in *Rehaif* v. *United States*, 588 U. S. \_\_\_ (2019). Gregory Greer's and Michael Gary's felon-in-possession convictions were not yet final when *Rehaif* was decided. The District Court did not inform Gary of the knowledge-of-status element at his plea colloquy, and Greer's District Court did not instruct the jury that it had to make a knowledge-of-status finding to convict. Neither Greer nor Gary objected to those omissions. The question now is whether they have shown that their convictions should be vacated under plain-error review.

I agree with the Court that Greer is not entitled to such relief because he cannot show that the trial error affected his substantial rights.  I write separately to highlight two limits on today's decision.  First, the Court's analysis in Greer's case does not extend to the distinct context of harmless-error review, which applies when defendants contemporaneously object at trial.  Second, the knowledge-of-status element is an element just like any other.  The Government must prove it beyond a reasonable doubt, and defendants seeking relief based on *Rehaif* errors bear only the usual burden on plain-error review.  With that understanding, I join the portions of the Court's opinion addressing Greer's case and affirming the judgment of the Court of Appeals for the Eleventh Circuit.

As to Gary, I agree with the Court that the Court of Appeals for the Fourth Circuit erred in holding that the District Court's failure to inform Gary of the knowledge-of-status element automatically entitled him to relief on plain-error review.  Unlike this Court, I would not decide in the first instance whether Gary can make a case-specific showing that the error affected his substantial rights.  I would instead vacate the judgment below and remand for the Fourth Circuit to address that question.  I therefore respectfully dissent from the judgment as to Gary.

## I
### A

Greer was found guilty by a jury that was not instructed on the knowledge-of-felon-status element required by *Rehaif*.  To obtain relief on plain-error review, Greer must show, among other things, that the error affected his substantial rights.  Here, that means Greer must show a reasonable probability that a correctly instructed jury would have reasonably doubted that he knew he was a felon when he possessed the gun.  Greer has not carried that burden.

The evidence at trial showed that, while Greer was talking to police officers, he "touched the right side of his waistband repeatedly" and then sprinted away when the officers said they were going to pat him down for weapons. 798 Fed. Appx. 483, 485 (CA11 2020) (*per curiam*). Two officers followed him into a stairwell and "heard the dull sound of a heavy object fall to the ground." *Ibid.* A third found a pistol lying on the landing. *Ibid.*

Greer's presentence report shows that, before he possessed the gun at issue, "he accrued five felony convictions" and "served separate sentences of 36 months and of 20 months in prison." *Id.*, at 486. He was released from custody just six months before his arrest in this case. Greer was an adult when he was convicted of these felonies and when he served these two separate sentences of well over a year. As the Court explains, this evidence outside the trial record is relevant to whether Greer has shown an effect on his substantial rights.

On appeal, Greer had notice of the *Rehaif* requirement and an opportunity to rebut the force of this evidence. He has not done so. He therefore has not shown a reasonable probability that the jury in an error-free trial would reasonably doubt that he knew of his felon status when he possessed the gun. As a result, the error did not affect his substantial rights.

B

Critically, this type of analysis is not permissible in the "harmless error" context. When a defendant contemporaneously objects and is wrongly overruled, appellate courts generally review for harmless error. See Fed. Rule Crim. Proc. 52(a). Under that standard, the Government retains the burden to show that any constitutional error is harmless beyond a reasonable doubt. See *Neder* v. *United States*, 527 U. S. 1, 7 (1999). Considering evidence outside the record and placing any evidentiary weight on the defendant's

silence would be patently unfair in that context.

On harmless-error review, defendants have not forfeited any of their rights, including their right to have a jury decide whether there is reasonable doubt as to any element of the crime charged.  For that reason, a constitutional error is harmless only if there is no reasonable doubt about whether it affected the jury's actual verdict in the actual trial.  See, *e.g., Sullivan* v. *Louisiana*, 508 U. S. 275, 279 (1993) (reviewing courts must determine "what effect [the error] had upon the guilty verdict in the case at hand").  Incriminating evidence the jury never considered is irrelevant to that inquiry.  See *Yates* v. *Evatt*, 500 U. S. 391, 404–406 (1991) (courts "must ask what evidence the jury actually considered in reaching its verdict" to decide the basis on which "the jury actually rested its verdict").  Appellate courts cannot find errors harmless simply because they believe that inculpatory evidence the Government never put before the jury (like Greer's presentence report) is sufficient to find the defendant guilty.

Nor have defendants on harmless-error review forfeited their right to require the Government to prove its case beyond a reasonable doubt.  The Court places great weight on the fact that Greer has not explained how he might convince a jury to doubt that he knew he was a felon.  See *ante,* at 6.  On harmless-error review, courts cannot put such weight on a defendant's failure to make an affirmative case.  The burden of proof beyond a reasonable doubt remains squarely with the Government.

In sum, if the Government fails to carry its burden, over the defendant's objection, appellate courts cannot correct that shortcoming by looking to incriminating evidence the Government never submitted to the jury or by relying on the defendant's failure to demonstrate his own innocence on appeal.  Cf. *In re Winship*, 397 U. S. 358, 364 (1970) (a "free society" requires that "every individual . . . have confidence that his government cannot adjudge him guilty of a

criminal offense without convincing a proper factfinder of his guilt with utmost certainty"). The Court's approach in Greer's case is a function of the shifted burden of persuasion under the substantial-rights prong of plain-error review. It has no application in the harmless-error context.

### C

Today's decision also should not be read to create a legal presumption that every individual convicted of a felony understands he is a felon. The Government must prove the knowledge-of-status element beyond a reasonable doubt, just like any other element. Standing alone, the fact of a prior felony conviction is hardly enough to meet that exacting standard. Individuals convicted of crimes carrying a potential term of incarceration of more than one year may "ordinarily" or "typically" know that fact. *Ante,* at 2, 4, 6. But that is a far cry from proof beyond a reasonable doubt that any individual person on trial knew his status when he possessed a gun.

Nor does today's decision impose a uniquely heavy burden on defendants who must establish that a *Rehaif* error affected their substantial rights. Such defendants must make only the same showing as any other defendant at this stage: a reasonable probability of a different outcome. Defendants who show a reasonable probability that a properly instructed jury would have had reasonable doubts about the knowledge-of-status element are entitled to relief.

There are many reasons a defendant might not know a prior conviction could have led to a sentence of more than a year in prison. Most obviously, as the Court recognized in *Rehaif,* "a person who was convicted of a prior crime but sentenced only to probation [may] not know that the crime [was] '*punishable* by imprisonment for a term exceeding one year.'" 588 U. S., at \_\_\_ (slip op., at 8). Even if a defendant was incarcerated for over a year, moreover, that does not necessarily eliminate reasonable doubt that he knew of his

felon status. For example, a defendant may not understand that a conviction in juvenile court or a misdemeanor under state law can be a felony for purposes of federal law. Or he likewise might not understand that pretrial detention was included in his ultimate sentence.[1] Confusion along these lines becomes more likely as time passes.

If a defendant demonstrates why a jury in an error-free trial might have reasonable doubts as to the knowledge-of-felon-status element, he has shown a reasonable probability of a different outcome. That is so even if the fact of a prior felony conviction is uncontested, and even if the reviewing court would still vote to convict were it sitting on the jury in the first instance. After all, reasonable judges and juries often disagree.[2]

With these clarifications, I join the portions of the Court's opinion affirming the judgment of the Eleventh Circuit.

## II

I dissent from the judgment as to Gary. The question the United States asked the Court to answer is "[w]hether a defendant who pleaded guilty to possessing a firearm as a

---

[1] Presentence reports can also be materially wrong or incomplete in ways that did not matter at sentencing but might be critical to a *Rehaif* defense. For instance, they might incorrectly describe the time a defendant spent actually incarcerated, or not reflect a defendant's mental illness or the fact that a prior court erroneously described the consequences of conviction. As the Court recognizes and the Government repeatedly represented at oral argument, see *ante,* at 5; Tr. of Oral Arg. in No. 19–8709, pp. 42–43, 50–51, 61–62; Tr. of Oral Arg. in No. 20–444, pp. 16–17, defendants may rely on new evidence to support any arguments like these on appeal.

[2] Compare, *e.g., United States* v. *Lockhart*, 947 F. 3d 187, 206 (CA4 2020) (en banc) (Rushing, J., dissenting) (predicting the Government would not have "'any difficulty at all in offering overwhelming proof that [the defendant] knew'" his status in light of his more than "six years in prison"), with Electronic Case Filing in No. 3:15–cr–34 (WDNC) (ECF), Doc. 72, pp. 14–16 (defense closing argument at trial on remand, arguing exclusively that the defendant did not know of his status based on juvenile convictions); ECF Doc. 68 (jury verdict of not guilty).

felon . . . is automatically entitled to plain-error relief if the district court did not advise him that one element of that offense is knowledge of his status as a felon." Pet. for Cert. in No. 20–444, p. I. That was the sole basis for the Fourth Circuit's decision that the *Rehaif* error affected Gary's substantial rights, see 954 F. 3d 194, 203–208 (2020).

For the reasons the Court articulates, I agree that automatic relief is inappropriate. Gary must therefore make a case-specific showing that the error affected his substantial rights. Unlike Greer, Gary argues he can do so. See Brief for Respondent in No. 20–444, pp. 46–50; Tr. of Oral Arg. in No. 20–444, pp. 38–40. The Government addresses these contentions on the merits, with no mention of forfeiture. See Reply Brief in No. 20–444, pp. 7–9. "Any further consideration of that question is properly addressed by the [Court of Appeals] on remand, subject to ordinary principles of waiver and forfeiture." *McDonough* v. *Smith*, 588 U. S. \_\_\_, \_\_\_, n. 3 (2019) (slip op., at 6, n. 3); see also *Retirement Plans Comm. of IBM* v. *Jander*, 589 U. S. \_\_\_, \_\_\_ (2020) (*per curiam*) (slip op., at 3) ("[T]he Court of Appeals should have an opportunity to decide whether to entertain these arguments in the first instance"). I would limit our decision to the question presented and would vacate and remand for the Fourth Circuit to decide all remaining issues. I respectfully dissent from the judgment as to Gary.