In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-3169

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANDRE BOWYER,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:23CR00056-001 — **William M. Conley**, *Judge.*

———————————

ARGUED JUNE 5, 2024 — DECIDED SEPTEMBER 17, 2024

———————————

Before EASTERBROOK, BRENNAN, and JACKSON-AKIWUMI,
*Circuit Judges.*

BRENNAN, *Circuit Judge.* Andre Bowyer, a national of Jamaica, pleaded guilty to the crime of re-entering the United States without permission after previously being removed. 8 U.S.C. § 1326(a). During his sentencing allocution, Bowyer sought to stress the ties he had formed to a family

here during the year or so between his unlawful reentry and his arrest on new criminal charges. The district judge interrupted and at great length characterized Bowyer's account as lacking insight and unconvincing. After the judge's comments took up much of Bowyer's allocution, he asked if Bowyer had more to say, and Bowyer demurred. In the end, Bowyer received a below-guidelines sentence.

Bowyer appeals, arguing that there was a violation of his right at sentencing to make his own statement, in his own words, and in his own way. Bowyer concedes he did not object in the district court, so our review is limited by the plain-error standard. Bowyer does not offer what he would have argued had he spoken more during his allocution, or how those arguments would have led to a lower sentence. So even if the judge erred (a question we do not answer), Bowyer has not shown that the error was plain, that it violated his substantial rights, or that it seriously affected the fairness of the proceedings.

## I. Background

We begin long before the sentencing hearing in dispute here. Bowyer was born in Jamaica, where he had a relationship with a woman who he believed was the mother of his child. He discovered later that he was not the child's father. He sought to maintain contact with the child, but the mother stopped responding.

In 2013 Bowyer and others began to perpetrate a phone scam, falsely telling victims they had won a lottery and needed to wire tax payments on the winnings to various accounts in Jamaica. In 2016 Bowyer came to the United States for the first time. He was charged with and pleaded guilty to

conspiracy to commit mail fraud in federal court in Louisiana and in 2017 he received a 78-month prison sentence.

After Bowyer was released he was removed to Jamaica in 2022 and forbidden to reenter the U.S. for 10 years. That same year he re-entered anyway using fake identification documents. In the spring of 2022, Bowyer met Elixsa Diaz and her family of seven children. He moved into their home in Grant County, Wisconsin, and he says he formed a strong paternal bond with the children. Within a year of moving in Bowyer came to government attention on suspicion of again committing mail fraud. That he was in this country illegally also came to light. He pleaded guilty to unlawfully entering the United States after prior removal in violation of 8 U.S.C. § 1326(a).

Of course, we were not present at the sentencing hearing, and our window into the events before, during, and after the allocution is limited to the transcript. That record of the proceedings relays that Bowyer was invited to give his allocution. At the same time the judge said he read a letter Bowyer had written to the court, which detailed his poverty in Jamaica and his longing to be a father to someone, especially because the child he thought was his was not.[1] During his allocution, Bowyer stressed his remorse, his love for the Diaz children, and his depth of feeling at serving as their father figure when (according to Bowyer) he was likely unable to have biological children. Diaz and her children also wrote letters in support, although their relationship status is unclear, as Bowyer was not living in their home for two weeks before his arrest.

---

[1] The four-page letter, which we have reviewed, is in the record at district court DE 19-1.

The district judge's statements focused on his opinion of Bowyer's motivation in engaging in the relationship with Diaz. The judge offered his evaluation of the relationship as manipulative, both of the family and, in presenting it as a factor at sentencing, of him. The judge characterized it as "more … of a relationship … of convenience [for Bowyer] than it is for Ms. Diaz or her family." Under the sentencing factors the judge had to consider, he saw little relevance in this part of Bowyer's life. The "worst part" of the allocution to the judge was that Bowyer "seem[ed] to be still thinking that I'm going to reduce your sentence because of it." He sought to disabuse Bowyer of this notion, saying "I have a responsibility to sentence under factors that are clear under the statute, and you're crying about not being able to be a biological father. Can you understand why this isn't really pertinent right now?" In the judge's view, Bowyer "had to be aware that … the relationship was going to end" because he was not here legally, he had previously been removed for breaking the law, and he had apparently started engaging in new acts that constituted or resembled fraud, thus further increasing his risk of discovery. Despite this Bowyer had permitted the children to become attached to and reliant on him.

The judge's comments dominated Bowyer's allocution. As soon as Bowyer began speaking the judge started talking and made lengthy comments for most of the allocution. Measured by pages and lines in the transcript, the judge spoke for more than 80% of the allocution portion of the sentencing hearing. As a result, Bowyer argues, he was never able to expand on his argument for very long.

Our understanding of the allocution is limited to the transcript. So far as we know, Bowyer was able to speak long

enough to communicate his theory of mitigation. The effect on Bowyer of the frequency and tone of the judge's comments is unclear. Bowyer's statements and interjections in response to the judge's remarks did get shorter. When the judge asked if there was anything else Bowyer would like to add, Bowyer's final statement was: "Your Honor, I just want to say I'm sorry to Ms. Diaz. I'm really sorry. I really do—really do." The record yields no reason to conclude that Bowyer had more comments to offer, on this mitigation argument or other topics. Whether this is a result of Bowyer's feeling cowed or of his having nothing more to say is not plain.

## II. Analysis

Because he did not object at sentencing, Bowyer concedes we review for plain error. *See United States v. Cunningham*, 883 F.3d 690, 698 n.21 (7th Cir. 2018); *United States v. Luepke*, 495 F.3d 443, 448 (7th Cir. 2007). To warrant reversal for plain error, we must reach four conclusions: that an error occurred, that it was plain, that it affected substantial rights, and that the error seriously affected the "fairness, integrity, or public reputation" of judicial proceedings. *Greer v. United States*, 593 U.S. 503, 507–08 (2021); *see* FED. R. CRIM. P. 52(b).

If the first and second prongs are satisfied in a denial-of-allocution case, this circuit presumes that the error affected substantial rights (the third prong). *Luepke*, 495 F.3d at 451. While this presumption has been called into question, *see United States v. Noel*, 581 F.3d 490, 505 (7th Cir. 2009) (Easterbrook, C.J., concurring), we treat the presumption as rebuttable. None of our case law suggests that it cannot be overcome by countervailing evidence in a particular case.

We first consider whether an error occurred, a question we leave unresolved. The parties cite *United States v. Covington*, in which there was no error even when the district judge interrupted repeatedly during a defendant's allocution. 681 F.3d 908 (7th Cir. 2012). Important to that case was that the interjections were phrased neutrally with the purpose of returning the allocution from stray topics back to the defendant's arguments in mitigation. *Id.* at 909. Here, some of the district court's interruptions were to tell Bowyer why the relationship with Diaz and her children was not relevant. But in *Covington* the defendant was able to speak for quite some time—around six pages of the transcript—before the first interruption. *Id.* at 911. And some of the district judge's remarks here were more than friendly questions to keep him on-topic. They veered into a running commentary during Bowyer's time to allocute. A de novo review of Bowyer's sentencing, then, might pose difficult questions.

Our review, however, is limited to plain error, and some factors weigh against Bowyer's interpretation of his exchanges with the district judge. Despite the frequency of the interruptions, the judge never attempted to end the allocution early or tell Bowyer he could not speak. The judge also solicited further comments at the end of the allocution, and Bowyer briefly responded. Bowyer has not noted additional arguments he wanted to make during the allocution but omitted because of how much the judge spoke. *Cf. United States v. Greer*, 593 U.S. 503, 509 (2021) (observing, in context of challenge to conviction, that defendants on plain-error review may demonstrate prejudice in their appellate briefs by explaining what else they could have shown the district court if given a chance). Ultimately, the record is unclear as to whether Bowyer was so daunted that the chance to speak

further was meaningless, or he had said all he wished. Thus, we would struggle to conclude, especially from the black-and-white of a transcript, whether there was error here.

Even if there was error (again, which we do not decide), we conclude that it is not plain. Error can be "plain" only when unambiguous case law instructs the court against it. *See Noel*, 581 F.3d at 502 (concluding error of not personally addressing defendant was plain because Supreme Court had explicitly instructed district courts to do so). Our court has not explicitly stated when error is plain in this circumstance. A fellow circuit has held in an allocution case that any possible error was not plain because it did not contradict settled precedent from the Supreme Court or prior in-circuit cases. *United States v. Jimenez*, 61 F.4th 1281, 1289 (10th Cir. 2023) (affirming sentence when district judge stops short of "definitively announcing" sentence before allocution but implicitly limiting scope of allocution). The same is true here. The dearth of law on circumstances like these precludes any potential error from being "plain." As Bowyer's skillful counsel argued before us, this case is unique. *Covington* is the only case with somewhat similar circumstances of frequent interruptions, and there was no error in that case. 681 F.3d at 911.

Even if there was plain error, Bowyer's appeal falters on the third and fourth prongs of the plain-error test, regardless of a presumption of prejudice applying to the third prong. That presumption stems from the difficulty of discerning the effect on a sentence of a colloquy that never happened. *Luepke*, 495 F.3d at 451. That is not a concern here: Bowyer described his theory of mitigation, orally and in writing, so the judge could evaluate it. Without speculation, we know that the judge saw Bowyer building a relationship under threat of

removal as manipulative and damaging for the children, who grew attached to a man who could not remain in the country after his prior removal for criminal activity. With no indication in the record or on appeal that Bowyer had any further arguments, we can conclude that further allocution along these lines would not have convinced a judge who already thought the contention was irrelevant. *Cf. Greer*, 593 U.S. at 509.

Allocution is a keystone of criminal procedure, *see generally* FED. R. CRIM. P. 32(i)(4)(A)(ii), with a long and important history in the common law. *Green v. United States*, 365 U.S. 301, 304 (1961). As the Court noted, notwithstanding major changes in criminal procedure since the seventeenth century, the procedural rule permitting allocution has never been limited, nor has the need been lessened for the defendant to personally "present to the court his plea in mitigation." *Id*. Important to the Court was that this criminal rule afforded the defendant the opportunity to speak as well as to present mitigating information. *Id*. Revisions to the rule have not altered those two prerogatives.

As a formal chance to speak directly to the judge, allocution allows a defendant to (among other things) express remorse, accept responsibility, and explain personal circumstances. Allocution should be construed broadly so defendants have the latitude to address any information that might mitigate their sentence. *Covington*, 681 F.3d at 910. Hearing arguments directly from the defendant may convince a sentencing judge in a way that a polished argument from counsel could not. *Green*, 365 U.S. at 304.

Even so, our precedents hold that denial of the right to allocution is "not a fundamental defect" automatically—so we

may look to the facts to see if the proceedings were seriously damaged. *United States v. Pitre*, 504 F.3d 657, 663 (7th Cir. 2007) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Here, we cannot conclude that the proceedings were fundamentally unfair. Bowyer's opportunity to allocute was not completely overlooked or affirmatively withheld. *See Noel*, 581 F.3d at 504. He spoke for about 40 lines in the transcript (a little over a page and a half). The defense also had opportunities outside the allocution to offer arguments in mitigation. As an example, before the hearing, Bowyer submitted the detailed four-page letter that the district judge considered. *See United States v. Yankey*, 56 F.4th 554, 558 (7th Cir. 2023) (acknowledging that reading defendant's sentencing letter can be evidence that arguments in mitigation were considered).

Once both parties had agreed on the guidelines range, the prosecutor made a brief statement and Bowyer's counsel made a longer argument, in which he also mentioned Diaz. Although the district judge was critical of defense counsel's arguments and interjected several times, the transcript shows the judge was listening closely. He responded to the defense raising Diaz and her children as a factor in mitigation, remarking that it made him feel "manipulated and used." The judge also gave counsel a chance to respond to these criticisms, and the judge was attentive to any further arguments, raising with counsel that there was a "third thing" counsel had previously wanted to mention but had not. Finally, the sentence Bowyer received was below the guidelines range, indicating Bowyer did receive some of the clemency he asked for. We also see no reasonable prospect of a greater downward variance. So as to the fourth prong, the asserted error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings.

This opinion, constrained by the plain-error standard, should not be read as accepting frequent and lengthy interruptions of a defendant during allocution. Without being present at the sentencing, we cannot assess the "mood in the room." Just so, district judges should hesitate to leave an impression, even in a transcript, of impatience or discouragement during the important moment the defendant addresses the judge. Defendants must be shown that they are free to speak to the court whose sentence will determine their liberty. *See Covington*, 681 F.3d at 911. District judges may certainly ask questions, *see id.* at 909, and sometimes they may feel obligated to do so, including to ensure the topics in an allocution remain relevant. But care should be taken to ensure that judicial comments do not dominate the time for allocution or repeatedly criticize an argument that a defendant has offered, especially after the judge's point has been well established.

For these reasons, we conclude that Bowyer has not met the plain-error test for reversal.

AFFIRMED.

JACKSON-AKIWUMI, *Circuit Judge*, dissenting. At a sentencing hearing, the court must respect the defendant's need to "be personally afforded the opportunity to speak" and "present to the court his plea in mitigation." *Green v. United States*, 365 U.S. 301, 304 (1961). The Federal Rules of Criminal Procedure codify this entitlement in Rule 32(i)(4)(A)(ii) by requiring the sentencing court to "permit the defendant to speak *or* present any information to mitigate the sentence" (emphasis added). Focusing only on the right to present mitigating arguments, my colleagues conclude that, even if the court erred by repeatedly and contentiously interrupting defendant Andre Bowyer, that error was not plain; did not prejudice him; and did not affect the fairness, integrity, or public reputation of judicial proceedings. But the majority opinion views the sentencing transcript too generously while defining Bowyer's right of allocution—which has a history dating back to 1689—too narrowly. *See Green*, 365 U.S. at 304 (noting the common-law right of allocution). "When it comes to allocution—the defendant's *own* chance to tell his story—it is hard to see how incessant interruptions from the court could ever be helpful." *United States v. Covington*, 681 F.3d 908, 912 (7th Cir. 2012) (Wood, J., dissenting). I therefore respectfully dissent.

Beginning with the first element of the plain-error standard, the majority opinion evades the conclusion that the court's frequent interruptions constituted error. In my view, the sentencing transcript makes a conclusion of error unavoidable. As my colleagues note, the judge speaks for 80% of what should be Bowyer's opportunity for allocution. But worse is that, just as Bowyer begins to speak, the judge interjects to address Elixsa Diaz by stating how unfortunate it is that Bowyer has defrauded her. This is after Bowyer says only

13 words and before he can complete a single sentence. And the rest of Bowyer's attempt at allocution is no different. The judge berates Bowyer repeatedly and at length—calling him "manipulat[ive]" and saying he was "painting a picture . . . that has nothing to do with the true reality"—despite Bowyer's profuse attempts to apologize for the harm he had caused.

The court violated Rule 32(i)(4)(A)(ii) and deprived Bowyer of his right to a meaningful allocution. The majority opinion equivocates because Bowyer does not explain what more he would have said, because the judge never told Bowyer he could not speak, and because perhaps the judge was attempting to keep Bowyer focused on topics the judge felt were more relevant. I believe these arguments do not affect whether error occurred for two reasons. First, the majority conflates the error and prejudice prongs of plain-error review: the court's actions are the error, and whatever else Bowyer was prevented from saying can inform whether that error prejudiced him. Second, even if the court were trying to guide Bowyer to topics the court believed more relevant, the right of allocution is not just a right to present arguments in mitigation; it separately entitles a defendant to "speak for himself." *Green*, 365 U.S. at 304. Although the court did not say in so many words that Bowyer had to stop speaking, its frequent, confrontational interruptions had the same effect. In doing so, the court "reduced to a formality" Bowyer's right of allocution, *United States v. Barnes*, 948 F.2d 325, 331 (7th Cir. 1991), and "did not afford him a *meaningful* opportunity to address the court prior to the imposition of sentence," *United States v. Luepke*, 495 F.3d 443, 444 (7th Cir. 2007) (emphasis added). Bowyer's allocution was over almost as soon as it began.

Even if the court did err, the majority opinion says, that error was not plain. I respectfully disagree. My colleagues rely on an out-of-circuit decision, *United States v. Jimenez*, 61 F.4th 1281 (10th Cir. 2023), for the proposition that an error is not plain unless it directly offends past precedent. *Id.* at 1289. But no such requirement to have on-point precedent exists: an error is plain so long as it is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). It is in the qualified immunity context where a closely analogous case is required; neither the Supreme Court nor this court has ever equated a "clear or obvious" error with the violation of "clearly established" law that negates qualified immunity. An error can be plain or obvious for reasons other than running afoul of prior judicial decisions. It could, as in this case, be plain because it conflicts with the Federal Rules. The court did not "permit the defendant to speak" or to "present any information to mitigate the sentence" in any meaningful way. FED. R. CRIM. P. 32(i)(4)(A)(ii). As the judge acknowledged on the record, Bowyer was crying by the end of his frustrated allocution. The constant, needless interruptions deprived Bowyer of the right to express himself.

Further, the court's actions affected Bowyer's substantial rights. My colleagues say that Bowyer cannot enjoy the presumption of prejudice that we have recognized for a defendant deprived of the right of allocution. *Luepke*, 495 F.3d at 451. Here again the majority focuses on Bowyer's inability to identify "further arguments" he would have made at sentencing were he allowed to complete a sentence, which leads the majority to "conclude that further allocution . . . would not have convinced a judge." But the presumption exists precisely to "avoid[] our speculation about what the defendant might have said had the right been properly afforded him." *Id.*

Therefore, we have concluded previously that even where a defendant-appellant "has not submitted that he would have said anything different" during allocution, the plain error still affects substantial rights. *See United States v. Noel*, 581 F.3d 490, 503 (7th Cir. 2009) (citing *Green*, 365 U.S. at 304).

Even if Bowyer's letter and his stymied efforts at allocution mentioned all the topics he wished to cover—he was not obliged to tell us if that is so—the plain error prejudiced him. "[I]t is not only the content of the defendant's words that can influence a court, but also the way he says them." *Id.* But before Bowyer even began speaking, the judge remarked, "I did read your letter with some care, and I don't—I don't know if you're lying to yourself or to me." Bowyer thus faced hostility ahead of, and during, his allocution; was prevented from speaking at any length; and ultimately gave up. In my view, this is "hard evidence of prejudice," *Covington*, 681 F.3d at 914 (Wood, J., dissenting), even though in this situation, prejudice ought to be presumed.

The nature of the right at issue leads to another form of prejudice when it is trampled. The error insults the defendant's dignity when he is at his most vulnerable—poised to learn how long he will lose his liberty. Bowyer's right to speak was not limited to articulating arguments that the court would find persuasive. Rather, we have conceived of the right of allocution as a "personal one." *Luepke*, 495 F.3d at 449. Allocution can also allow defendants to "speak their mind," and it has a humanizing function, independent of any mitigatory purpose. *See* Kimberly A. Thomas, *Beyond Mitigation: Towards a Theory of Allocution*, 75 FORDHAM L. REV. 2641, 2667 (2007). Alternatively framed as a "right to be heard," it is "minimally invasive" and gives the defendant "a few moments of court

time" during one of the court's "weighty responsibilit[ies]." *Barnes*, 948 F.2d at 331.

Finally, the majority concludes that any error here is not the kind that seriously affects the fairness, integrity, or public reputation of judicial proceedings. This cannot be squared with what we have said about the value of the right of allocution: it "maximiz[es] the perceived equity of the process," permits the defendant to "plead for mercy," and "enable[s] our system of justice to mete out punishment in the most equitable fashion possible." *Id.* at 328. My colleagues say that this is the "rare" case in which the infringement of the right of allocution "did not implicate these core values," *Luepke*, 495 F.3d at 452, because Bowyer was able to submit a written letter and because the judge was attentive at sentencing. But neither of those facts is responsive to whether Bowyer received the expressive benefits of a meaningful allocution. Moreover, a defendant whose words have been ridiculed could surely fear that, if he continued to speak, he could detrimentally affect his sentence. So too could a member of the public sitting in the gallery come away with an unfavorable impression about the fairness and integrity of sentencing proceedings.

The majority ends by cautioning that the plain-error standard drives its decision, which should not be read to condone frequent or lengthy interruptions. True, my colleagues do not endorse the court's actions, but their application of the standard is not consistent with the gravity of a right "so highly prized for so sound a reason for so long a time [which] deserves to be rigorously enforced." *Green*, 365 U.S. at 311 (Black, J., dissenting). Today's decision dilutes the right of allocution and "soften[s] the blow of nonenforcement." *Id.* For this reason, I respectfully dissent.