**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1042
_____

UNITED STATES OF AMERICA

v.

JAMAR BATTLE,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 2-18-cr-00524)
District Judge:  Honorable William J. Martini
_____

Argued:  June 24, 2021
_____

Before:  CHAGARES, PORTER, and ROTH, Circuit Judges

(Opinion filed: August 5, 2021)
_____

Michael P. Koribanics [ARGUED]
Koribanics & Koribanics
685 Van Houten Avenue
Clifton, NJ 07013

    Counsel for Appellant

Mark E. Coyne
Steven G. Sanders [ARGUED]
Office of United States Attorney
970 Broad Street

Room 700
Newark, NJ 07102

Counsel for Appellee

———————

OPINION[*]

———————

CHAGARES, Circuit Judge.

A jury convicted Jamar Battle of knowingly possessing a firearm after having previously been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Battle now argues that he is entitled to a new trial because the Government engaged in prosecutorial misconduct and failed to prove that he knew he was a convicted felon. For the following reasons, we will affirm the District Court's judgment of conviction.

I.

We write solely for the parties and so recite only the facts necessary to our disposition. Battle was incarcerated from March 2013 through May 2018 because he committed a felony. On July 4, 2018, he had an argument with his then-girlfriend Takiyah Todd, who was at a party with a friend. Battle threatened to shoot that friend during a phone call with Todd that night. After the call, Todd sent Battle a text message saying "u not bout shoot at my friend car." App. 272; Supp. App. 14. When Todd's friend drove her back to her apartment, Battle approached the car and a gun was fired. Todd's neighbor George Molina believed he saw Battle fire the gun at the friend's car

———————

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

and then leave in another car owned by a man named Jahid Vauters. The bullets fired that night struck L.W., a girl who was passing by with her family. Battle texted Todd shortly after the shooting; in response to her message "You scared me 4real," he answered "U tried to play me wit ur friend so thts wat it is. Bet!" App. 272; Supp. App. 14.

Battle was later indicted on one count of knowingly possessing a firearm as a convicted felon, to which he pleaded not guilty. In pretrial custody, Battle spoke on a recorded prison line with Vauters. He told Vauters to meet him in person, saying "I don't even want to talk . . . over this phone." App. 411–14; Supp. App. 16–17. Also before trial, Battle filed a motion in limine to preclude the admission of L.W.'s medical records and testimony from her father. The District Court entered an order precluding the Government from introducing L.W.'s medical records, allowing her father to testify "except that he is prohibited from testifying about the shooting victim's age," and providing that "no party or witness shall make any reference or argument to the shooting victim's medical records or age." App. 19. Prior to jury selection, the court orally confirmed with the parties "that at the trial there [would] be no mention of the age of the victim." App. 42–43.

The Government and its witnesses referred to L.W. as a "child" or "little girl" multiple times at trial, but Battle did not object to these references. The Government also entered the recorded phone call between Battle and Vauters into evidence without objection. The parties stipulated that Battle had been convicted of a crime punishable by imprisonment for a term exceeding one year. Battle argued at trial that he did not possess

3

the gun that injured L.W. He elicited testimony reflecting that he was imprisoned from 2013 through 2018, a time in which others used the same gun to commit various crimes.

In summation, the Government argued that Battle told Vauters that he did not want to speak on the phone because he knew it was being recorded. Battle objected that this reference violated his right to remain silent, but the District Court disagreed. During rebuttal, the Government also asked the jury to consider "what was proven" to support Battle's theory of the case, prompting Battle to object that the Government sought to shift the burden of proof. In response, the District Court instructed the jury that the Government bore the burden of proof at all times and Battle did not have to prove anything. The District Court later instructed the jury that it did not need to find that Battle knew of his status as a felon in order to find him guilty. The jury convicted Battle.

Battle filed a motion for acquittal or a new trial, arguing that the evidence was insufficient to prove that he possessed a firearm and that the Government's comments during rebuttal deprived him of his right to a fair trial. The District Court denied the motion, holding that the evidence sufficed in light of Battle's text messages, witness testimony that Battle was the shooter, and video evidence corroborating that testimony. The court also held that its curative instructions mitigated any prejudice that would have resulted from the Government's comments in rebuttal. Battle filed a second motion for a new trial following the United States Supreme Court's decision in Rehaif v. United States, 139 S. Ct. 2191 (2019), arguing that the Government failed to prove that Battle knew of his status as a convicted felon. The District Court denied that motion too, reasoning that no rational jury would conclude that Battle did not know his status since

4

he elicited testimony that he had been incarcerated for five years. The court entered a judgment of conviction, and Battle timely appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. As explained below, Battle's claims are subject to plain error review. See Fed. R. Crim. P. 52(b). That standard of review requires Battle to show "(1) an error; (2) that is 'clear or obvious;' and (3) that 'affected [his] substantial rights.'" United States v. Gonzalez, 905 F.3d 165, 183 (3d Cir. 2018) (quoting United States v. Stinson, 734 F.3d 180, 184 (3d Cir. 2013)). When those requirements are met, "the court of appeals should exercise its discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." Rosales-Mireles v. United States, 138 S. Ct. 1897, 1905 (2018) (quoting Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016)). The third prong of plain error review typically requires the defendant to show a reasonable probability that, but for the error, the outcome of the proceeding would have been different. United States v. Welshans, 892 F.3d 566, 573 (3d Cir. 2018).

## III.

We address Battle's two claims of error in turn, starting with the claim that the Government did not prove Battle knew he was a felon and ending with the claim of prosecutorial misconduct. We disagree with both contentions.

## A.

The jury convicted Battle of violating 18 U.S.C. § 922(g)(1), which provides that

5

it "shall be unlawful for any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm." Section 924(a)(2) of Title 18 sets forth penalties for any person who "knowingly violates" § 922(g). Contrary to earlier precedents from the Courts of Appeals, the Supreme Court held in Rehaif that the Government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it" in order to prove guilt under these statutes. 139 S. Ct. at 2194.

Battle's trial took place before the Supreme Court decided Rehaif, so the District Court instructed the jury that it did not need to find that Battle knew of his status to convict him. Because Battle did not object to that instruction at trial, we review his claim only for plain error. Greer v. United States, 141 S. Ct. 2090, 2096 (2021). As the Government concedes, the first two prongs of plain error review are satisfied. The instruction that the jury could convict Battle without finding that he knew his status was an actual error, and that error is obvious after Rehaif.

Battle's claim fails at the third prong of plain error review, though, as he has not shown that the error affected the outcome of his trial. Battle argues that the Government did not prove his guilt, as it only offered a stipulation that he was convicted of a felony without further evidence showing that he knew that fact on July 4, 2018. Battle might have a point under the logic of our prior decision in United States v. Nasir. We held there that while such a stipulation establishes the fact of conviction, it does not establish a defendant's knowledge of that fact on its own. See 982 F.3d 144, 172–73 (3d Cir. 2020) (en banc). However, the Supreme Court recently clarified that "[i]f a person is a felon, he

6

ordinarily knows he is a felon. . . . Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon." <u>Greer</u>, 141 S. Ct. at 2097 (emphasis in original). As a result, "unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon," a <u>Rehaif</u> error is not a basis for relief on plain error review. <u>Id.</u> at 2100. Battle makes no such representation on appeal. On the contrary, he elicited testimony establishing that he was continuously incarcerated over a five-year period ending just before the shooting on July 4.

The Supreme Court's decision in <u>Greer</u> furnishes another basis for us to affirm on this claim of error. While we previously restricted ourselves to the trial record on plain error review, <u>see</u> <u>Nasir</u>, 982 F.3d at 162, the Supreme Court has since explained that "an appellate court conducting plain-error review may consider the *entire* record." <u>Greer</u>, 141 S. Ct. at 2098 (emphasis in original). So "when an appellate court conducts plain-error review of a *Rehaif* instructional error, the court can examine relevant and reliable information from the entire record — including information contained in a pre-sentence report." <u>Id.</u> Battle did not object to his pre-sentence report's description of his criminal history, which reflects that his sentence from 2013 to 2018 corresponded to a felony count for unlawful possession of a handgun. Again, Battle has not provided us with any reason to doubt that he recognized this fact on July 4, 2018. Accordingly, we cannot conclude that the <u>Rehaif</u> error here warrants vacating Battle's conviction.

B.

Battle next claims that he was prejudiced by the cumulative effect of various instances of prosecutorial misconduct at trial.  We first consider whether there actually was misconduct, and if so, "whether that misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Welshans, 892 F.3d at 574 (quotation marks omitted).  We view "the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  Id. (quotation marks omitted).

Battle's claim focuses on instances where the Government and its witnesses referred to the shooting victim, L.W., as a "child" or "little girl."  He argues that these references prejudiced him and violated the pretrial order forbidding references to L.W.'s age.[1]  As the Government concedes, calling L.W. a little girl or child was inadvisable in hindsight, as it might increase the risk that the jury would render a verdict based on sympathy rather than evidence.  See id. at 576.  But that is not clear here, and we doubt that the references amounted to misconduct.  First, it is ambiguous whether the District Court's order forbade only direct references to L.W.'s numerical age, or also indirect allusions to her age range.  The Government may reasonably have believed the former, as

_____

[1] Battle argues that he raised this objection at trial by challenging a witness's reference to a child in a stroller, as he objected that "this is the fourth or fifth time, one of the Court's rulings was stating the age of the child who was shot."  App. 92.  But the child in the stroller was not L.W., and Battle concedes that he did not actually object to any allegedly improper references that occurred beforehand.  We consequently review Battle's unpreserved claim of cumulative prosecutorial misconduct for plain error.

8

Battle did not object to the court's later clarification "that at the trial there [would] be no mention of the age of the victim." App. 42–43. The Government's use of the phrases "little girl" and "child" may not have contravened the District Court's order as a result. See United States v. Taylor, 284 F.3d 95, 100 (1st Cir. 2002) (declining to find misconduct where "[t]he scope of the court's order was ambiguous" and defense counsel "made no effort to clarify the scope . . . or object contemporaneously"). Second, the Government's witnesses usually used these phrases without prompting from the Government, and the prosecutors typically used them to quote or follow up with the witnesses, again without objection from Battle. Cf. United States v. Haar, 931 F.2d 1368, 1375 (10th Cir. 1991) (declining to find misconduct where "it appears the witness gave an unresponsive and inappropriate response to a valid, narrowly tailored question by the prosecutor"). Even assuming that these references amounted to misconduct, we could not consider the misconduct severe under the circumstances.

Battle also argues that the Government sought to shift a burden of proof to him during its rebuttal summation, as it asked the jury to consider "what was proven" to support Battle's defense. We agree that this remark was improper. The Government specifically asked what was "proven" to support Battle, which may have suggested Battle had to prove something in his defense. See United States v. Balter, 91 F.3d 427, 441 (3d Cir. 1996). However, the District Court immediately instructed the jury that the Government bears the burden of proof at all times and Battle did not need to prove anything. We presume that juries follow these instructions, and that the instructions are most effective when given immediately after potential misconduct. See Welshans, 892

9

F.3d at 577. Consequently, we have little reason to believe that this comment infected Battle's trial with unfairness.

Battle finally argues that the Government improperly referenced his exercise of the Fifth Amendment right to remain silent when it mentioned that he did not want to talk with Vauters over the recorded prison line. The Government undoubtedly cannot draw negative inferences from a defendant's exercise of the right to remain silent. See Doyle v. Ohio, 426 U.S. 610 (1976); Hassine v. Zimmerman, 160 F.3d 941, 949 (3d Cir. 1998). More specifically, the Supreme Court held in Doyle that the Government may not "seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest." 426 U.S. at 611. The Government's comment here does not fall within the scope of Doyle because Battle did not testify, and the Government pointed not to Battle's silence, but to his statement to Vauters. See Anderson v. Charles, 447 U.S. 404, 408 (1980); see also, e.g., United States v. Lopez-Lopez, 282 F.3d 1, 12 (1st Cir. 2002) (noting that when an accused waives his Miranda rights "by voluntarily making statements, he may not rely on *Doyle* to object to the admission of those statements simply because the statements refer to the act of keeping silent."). Rather than invoking a right to remain silent, Battle expressed a desire to speak with Vauters. He simply asked to do so in person rather than on a recorded line. And because this was a conversation between friends, it is unclear why the jury would have drawn a connection between Battle's statement and the rights he may exercise during custodial interrogation. Indeed, if Battle was exercising his Miranda rights on the call, it

10

is unclear why he did not object to entering his statement into evidence. Under the circumstances, we agree with the District Court's conclusion that the Government did not impermissibly reference Battle's exercise of the right to remain silent.

Even if we assume that the foregoing actions were improper, the misconduct was not severe and the trial evidence against Battle was strong. Battle's girlfriend and her neighbor both identified him as the shooter, and their accounts were largely consistent with the other testimony and video evidence presented at trial. Battle's text messages to his girlfriend also corroborated his guilt, as he did not deny her suggestions that he shot at her friend's car; on the contrary, he acknowledged "thts wat it is." App. 272; Supp. App. 14. On the whole, Battle's trial was not "so infected . . . with unfairness as to make the resulting conviction a denial of due process." Welshans, 892 F.3d at 574 (quotation marks omitted). As a result, Battle is not entitled to a new trial.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.