

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-0212-21

**ELUID LIRA, Appellant**

**v.**

**THE STATE OF TEXAS**

### NO. PD-0213-21

**SCOTT HUDDLESTON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW
### FROM THE ELEVENTH COURT OF APPEALS
### JONES COUNTY

KELLER, P.J., filed a dissenting opinion in which KEEL and SLAUGHTER, JJ., joined.

## DISSENTING OPINION

In 2018, Appellant Huddleston was in prison for murder and Appellant Lira was in prison for felony possession of a controlled substance with intent to distribute when they each committed the current charged offense of assault on a public servant.[1] On March 13, 2020, at the beginning of the COVID-19 pandemic, the Supreme Court of Texas and this Court entered a joint emergency order which said, in relevant part:

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:
>
> a. Modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than 30 days after the Governor's state of disaster has been lifted;
>
> b. Allow or *require anyone involved in any hearing*, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, or court reporter, but not including a juror—*to participate remotely*, such as by teleconferencing, videoconferencing, or other means.[2]

By late May of 2020, the Supreme Court had issued its Seventeenth Emergency Order, which—with the exception of jurors and the time frame for the order—included the above language virtually word-for-word. The trial court set a Zoom hearing on Appellants' negotiated guilty pleas, to which Appellants objected. Relying explicitly on the emergency order, the trial court overruled the objections. Appellants reserved the right to appeal the Zoom issue. The Court now concludes that the trial court erred to require Appellants to resolve their cases by Zoom. It further concludes that

---

[1] I assume that the convictions listed in the indictment are the offenses for which the Appellants were incarcerated.

[2] *First Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket Nos. 20-9042 (SC) & 20-007 (CCA), 596 S.W.3d 265, Section 2 (Tex. March 13, 2020) (emphasis added).

the error was not harmless. In arriving at its conclusions, the Court principally relies upon *In re State ex rel. Ogg*.[3] I disagree with both of the Court's conclusions, and I disagree that *Ogg* supports them.

### A. Remote proceedings were authorized.

### 1. The Emergency Order authorized it.

The Supreme Court's Seventeenth Emergency Order provided in relevant part:

Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must, to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent:

a. except as provided in paragraph (b), *modify or suspend* any and all deadlines and *procedures*, whether prescribed by statute, rule, or order for a stated period ending no later than September 30, 2020;

\* \* \*

c. *Allow or require anyone* involved in any hearing, deposition, or other proceeding of any kind—including but not limited to a party, attorney, witness, court reporter, grand juror, or petit juror—*to participate remotely*, such as by teleconferencing, videoconferencing, or other means.[4]

Only Subsection (a) of the Emergency Order was at issue in *Ogg*.[5] The question in *Ogg* was whether the term "procedures" in that subsection encompassed waiving a jury trial against the wishes of a party entitled to one.[6] We held that the power to alter a "procedure" does not allow a court to "create authority to preside over proceedings over which the judge would otherwise be barred from

---

[3] 618 S.W.3d 361 (Tex. Crim. App. 2021).

[4] *Seventeenth Emergency Order Regarding the COVID-19 State of Disaster*, Misc. Docket No. 20-9071, 609 S.W.3d 119, 120, Section 3 (Tex. May 26, 2020) (emphasis added).

[5] 618 S.W.3d at 364.

[6] *Id.*

presiding."[7] We further concluded that the requirement that the State consent to waiving a jury was "not merely procedural" but implicated "the trial court's authority to preside over a particular type of proceeding"—a "bench trial."[8] In our discussion, we explained, "If the Supreme Court's Emergency Order were really intended . . . to permit trial judges to enlarge the types of proceedings over which they have authority, we would expect a provision to explicitly say so."[9] A "generically framed right to modify statutory . . . procedures" could not abrogate a statutory right to a jury trial.[10]

But in the present case, Subsection (c) of the Emergency Order is also at issue. As outlined above, Subsection (c) explicitly authorized the trial judge to "require" any person "to participate remotely." The Emergency Order subjected this explicit authorization only to "constitutional limitations." So the present cases differ from *Ogg* because (in the absence of a constitutional violation) the Emergency Order explicitly authorized what the trial court did here—in fact it demanded it. By contrast, the Emergency Order did not explicitly authorize a trial court to deny a party a jury trial.

### 2. The Constitution did not forbid it.

The constitutional right to presence is largely rooted in the Confrontation Clause of the Sixth Amendment, but when witnesses and evidence are not being confronted, the right to presence is protected only by Due Process.[11] Even the right to physical ("face-to-face") confrontation is not

---

[7] *Id.*

[8] *Id.* at 365.

[9] *Id.*

[10] *Id.*

[11] *United States v. Gagnon*, 470 U.S. 522, 526 (1985).

absolute.[12] Physical confrontation can be denied when "denial of such confrontation is necessary to further an important public policy and . . . where the reliability of the testimony is otherwise assured."[13] In *Maryland v. Craig*, the Supreme Court held that circumstances could permit a child complainant to testify by one-way closed circuit television, with defendant observing the testimony remotely.[14] For a due-process inquiry, the question is simply whether the defendant's "presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge."[15]

Here, an important public policy counseled in favor of denying face-to-face confrontation. Impeding the spread of COVID-19 during the pandemic was an important public policy interest, and the prevailing thought at the time was that preventing physical gatherings was necessary to further that policy interest.[16] In a letter addendum to its motion opposing the Zoom hearing, Lira's counsel alleged that the Allred Unit, where Lira resided, was on lockdown and that within the entire prison system:

> 2214 prisoners and 742 staff employees have tested positive with 457 prisoners and 145 staff members recovered. There have been 32 prisoner deaths connected to COVID-19 with an additional 27 under investigation. And there have been seven staff member deaths from COVID-19.

The prosecutor argued that it was safer to keep an offender in the Unit than "transporting

---

[12] *Maryland v. Craig*, 497 U.S. 836, 844 (1990).

[13] *Id.* at 850.

[14] *Id.* at 851-52.

[15] *Gagnon*, 470 U.S. at 526 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)).

[16] Appellants' plea proceedings, on May 27, 2020, occurred just one day after the Seventeenth Emergency Order issued.

them onto a bus, transporting them into a courthouse, taking them from the facility and all the way back again the exposure is far greater than having a hearing using this method . . . it not only assures their health is better but it also assures the safety of everyone involved is better protected." The record supports a conclusion that holding a Zoom hearing would better protect Appellants, prison personnel, and court personnel than an in-person hearing would.

And the reliability of the proceedings was otherwise assured. Appellants' proceedings were guilty plea proceedings, pursuant to plea agreements. Appellants were permitted to fully participate in those proceedings via videoconference. Given that the plea agreements were followed, Appellants received the sentences that they not only expected, but bargained for. Appellants' physical presence would not have made these proceedings more reliable, nor could it have given them a better outcome with respect to their charges than what they received. The trial court's proceedings did not run afoul of any constitutional provisions.

Although the Emergency Order could not trump constitutional protections even if it purported to do so, the conclusion that no constitutional limitations are at issue disposes of the only remaining question about the Emergency Order's language. Given the explicit language of the "remote participation" provision of the Emergency Order and the fact that constitutional limitations were not implicated, the Emergency Order's express terms authorized the trial court's actions in the cases before us.

### 3. Statute authorized the Emergency-Order provision.

The next question is whether the provision in the Emergency Order was lawful: whether the Emergency Order lawfully overrides statutes that would otherwise guarantee the defendant a right

to physical presence. Article 1.13 states that a waiver of the defendant's right to a jury trial must "be made in person by the defendant in writing in open court with the consent and approval of the court, and the attorney representing the State."[17] Article 1.15 provides that, to be convicted of a felony on anything other than a jury verdict, a person must have "in open court in person waived his right of trial by jury in writing in accordance with Articles 1.13 and 1.14."[18] Article 27.13 says that a plea of guilty "must be made in open court by the defendant in person."[19] Article 27.18 allows a court to accept a plea or waiver by video conference if both parties consent.[20]

Government Code Section 22.0035 allows the Texas Supreme Court to suspend, during an emergency, procedures dictated by other statutes:

> Notwithstanding any other statute, the supreme court may modify or suspend procedures for the conduct of any court proceeding affected by a disaster during the pendency of a disaster declared by the governor. An order under this section may not extend for more than 90 days from the date the order was signed unless renewed by the chief justice of the supreme court.[21]

The important limitation here is that the statutory mandates that may be suspended are those that

---

[17] TEX. CODE CRIM. PROC. art. 1.13(a).

[18] *Id.* art. 1.15

[19] *Id.* art. 27.13.

[20] *Id.* art. 27.18(a)(1) ("Notwithstanding any provision of this code requiring that a plea or a waiver of a defendant's right be made in open court, a court may accept the plea or waiver by video conference to the court if . . . the defendant and the attorney representing the state file with the court written consent to the use of video conference."). The statute has other requirements, none of which have been alleged to have been violated here. *See id.* art. 27.18, *passim*. Under another statute, a defendant confined in a penal institution may plead guilty under the procedures outlined in Art. 27.18 or may plead guilty in writing if certain other procedures are followed. *Id.* art. 27.19.

[21] TEX. GOV'T CODE § 22.0035(b).

prescribe "procedures for the conduct of any court proceeding." If the "in person" presence requirement in the statutes cited earlier qualify as "procedural" under this language, then suspension of that requirement is permitted.

Ogg did not address whether "deadlines and procedures" under Subsection (a) of the Emergency Order meant the same thing as "procedures for the conduct of any court proceeding" in the Government Code provision.[22] The Court did say that "neither Section 22.0035(b) nor the Emergency Order purport to authorize courts to modify substantive rights" and that "[b]oth the statute and the order address procedural matters."[23] But the Court then focused on the "deadlines and procedures" language of the Emergency Order and said that such language "presupposes a pre-existing power or authority over the case or the proceedings."[24] And, as explained above, the Court said that it would expect an explicit provision permitting a court to enlarge its own authority before it would construe the Emergency Order to do so.[25]

An explicit provision *is* at issue in this case, and so the question becomes: Is the requirement of in-person presence at a plea and waiver proceeding a "procedure for the conduct of a court proceeding?" Just from looking at the language of the statute, the answer would seem to be "yes."

*Ogg* does not require us to hold otherwise. As explained above, *Ogg* did not address whether the Supreme Court *could* use an emergency order to temporarily override the statutory requirement

---

[22] *See* 618 S.W.3d at *passim*.

[23] *Id.* at 364.

[24] *Id.*

[25] *Id.* at 365.

that the State consent to a jury waiver. It simply held that the Emergency Order at issue *did not* do so. But even if *Ogg* had held that the Government Code provision would not have permitted the Emergency Order to authorize what the trial court did in that case, the present case is still distinguishable.

*Ogg* pointed out that the trial court does not have the authority to conduct a bench trial unless both parties have given consent to do so.[26] That is a different thing than talking about how the parties must consent. *Whether* both parties consent to a bench trial addresses the trial court's power to proceed, but *how* both parties consent to a bench trial is a matter of procedure.

It is true that the State-consent language is in the same sentence as the "in person" language in Article 1.13. That does not mean that the two provisions share the same character as either involving the power to proceed or involving mere procedure. First, substantively, the two provisions are different, as explained above. Second, Article 1.13 also outlines *how* the State consents ("in writing, signed by that [prosecuting] attorney, and filed in the papers of the cause"). So Article 1.13 recognizes that the defendant and the State have to consent to a bench trial, and it provides procedures for how each party consents. This is consistent with the *fact* of consent going to the core power of the trial court to proceed and the *method* of consent being a matter of mere procedure, which could be overridden in an emergency. Third, Article 27.18 allows the "in person" requirement to be overridden, by consent, in favor of presence by videoconference. This suggests that the "in person" requirement is procedural despite any proximity of that requirement to the State-consent requirement. Fourth, the "in writing" requirement for the defendant's waiver is also in the same

---

[26] *Id.*

sentence as the State-consent requirement, but we have held the failure to comply with that requirement to be a mere statutory violation that is not cognizable on habeas corpus, at least absent a showing of harm.[27] We likened this to the requirement that the State's consent to a jury waiver be in writing.[28] And we pointed out that there was no constitutional requirement that a waiver be in writing.[29] Likewise, although there is ordinarily a constitutional right to physical presence, there was not one in the present case due to circumstances of the pandemic.

Finally, nothing in Article 1.15 requires a different result. It is true that the article says, "No person can be convicted of a felony except" if waiver of a jury occurs in open court and in person in accordance with Article 1.13.[30] This language does not mean that a trial court lacks the power to preside over the proceedings, only that obtaining a conviction would be improper absent adherence to the statutory procedures. As explained above, the failure to meet the writing requirement does not render a conviction a nullity. And the "No person can be convicted" sentence also contains a proviso that the State must introduce evidence in support of a guilty plea,[31] which we have held is a state-law requirement for which relief cannot be obtained on habeas.[32]

---

[27] *Ex parte Sadberry*, 864 S.W.2d 541, 542-43 (Tex. Crim. App. 1993).

[28] *Id.* at 542.

[29] *Id.* at 543.

[30] TEX. CODE CRIM. PROC. art. 1.15.

[31] *Id.* ("provided, however, that it shall be necessary for the state to introduce evidence into the record showing the guilt of the defendant and said evidence shall be accepted by the court as the basis for its judgment and in no event shall a person charged be convicted upon his plea without sufficient evidence to support the same").

[32] *Ex parte Martin*, 747 S.W.2d 789, 792-93 (Tex. Crim. App. 1988).

This discussion confirms that the Court has treated various requirements of 1.13 and similar statutes either as purely procedural or as relating to the power to proceed in accordance with the kind of requirements they are (the fact of waiver versus the procedures surrounding the waiver), rather than according talismanic significance to the position of those requirements in the text of the various statutes. Because the right to physical presence to waive a jury and enter a plea of guilty is merely procedural—as opposed to the fact of waiving a jury or the fact of pleading guilty—Section 22.0035 authorized the Supreme Court to issue an order overriding that procedural requirement.

**B. Appellant was not harmed**

**1. If there is error, it is subject to a harm analysis**

In *Cain v. State*, we held, "Except for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis."[33] I have already explained that there was no federal constitutional violation in this case. Under *Cain*, a state-law claim cannot be structural.[34] As *Cain* indicates, that is true even if the claim is jurisdictional. Even if constitutional error had occurred, only a very limited class of constitutional errors have been labeled by the Supreme Court as "structural,"[35] and the right to presence during plea or trial proceedings is not one of those.[36]

---

[33] 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).

[34] *See also Do v. State*, 634 S.W.3d 883, 897 (Tex. Crim. App. 2021) ("But only federal constitutional errors can be structural, and most are not.").

[35] *Greer v. United States*, 141 S. Ct. 2090, 2099 (2021).

[36] *See Neder v. United States*, 527 U.S. 1, 8 (1999) (list).

And any error was obviously harmless under any standard. The constitutional standard requires that an error be deemed harmless only if "the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."[37] Even under that least forgiving standard, we can conclude that any error was harmless. Appellants here received exactly what they wanted: the sentences they bargained for. They were able to attend the proceedings via videoconference and had the ability to consult with their attorneys and interact personally with the trial judge. Even beyond a reasonable doubt, we can and should conclude that nothing would have changed had the proceedings been conducted in person.

I respectfully dissent.

Filed: January 11, 2023
Publish

---

[37] TEX. R. APP. P. 44.2(a).