In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 24-3329

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ERLIN LUCERO-ASENCIO,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:22-cr-00058-JRS-KMB — **James R. Sweeney II**, *Chief Judge.*

_____

ARGUED NOVEMBER 13, 2025 — DECIDED APRIL 27, 2026

_____

Before EASTERBROOK, LEE, and MALDONADO, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* After Erlin Lucero-Asencio pleaded guilty to four felonies—conspiracy to possess methamphetamine with intent to deliver plus the substantive offense; conspiracy to commit money laundering; and unauthorized reentry after being deported—he was sentenced to 324 months' imprisonment. The district judge held him accountable for roughly 4.5 kilograms of pure

methamphetamine. He contends on appeal that the evidence does not support that finding, and he also protests his $500 fine.

The appellate complaint about the fine supposes that the district judge ignored Lucero-Asencio's financial circumstances. That is not so; those circumstances were addressed at sentencing. No more need be said about that subject.

The appellate complaint about the custodial term rests on the observation that evidence of record does not support a conclusion that the methamphetamine he distributed was pure (or "actual" in the language of U.S.S.G. §2D1.1). And that is true. The meth was tested, and an agent who had seen the laboratory report testified, but the report itself was not introduced into evidence.

There's a reason for the lab report being missing: Lucero-Asencio did not contest the statement in the presentence report that the meth he distributed was pure. Quite the contrary, his lawyer stated that he *agreed* with the report's conclusion that his offense level was 38. That is the right level if, and only if, Lucero-Asencio is accountable for about 4.5 kilograms of pure methamphetamine. To agree with the level-38 recommendation thus is to waive any challenge to the report's factual premises. Once Lucero-Asencio accepted a level-38 finding, it would have been pointless for the district judge to take evidence and make findings. The amount and purity of this drug were not being contested. (Counsel for Lucero-Asencio was not a potted plant; he did not introduce the lab report or cross-examine the agent, but made some objections to the presentence report. Nor was the judge inattentive; he ruled in Lucero-Asencio's favor on two of those objections.)

Lucero-Asencio wants us to apply the plain-error approach rather than the waiver approach. After all, counsel contends, Lucero-Asencio did not explicitly concede that the meth was pure. Yet he took the issue off the table by accepting an offense level of 38; what more was there to do?

Counsel now tells us that the strategy was foolish. The question, however, is whether it was *deliberate*, not whether it was wise. *United States v. Curtin*, 142 F.4th 503, 508 (7th Cir. 2025). See also *Henry v. Hulett*, 969 F.3d 769, 785–87 (7th Cir. 2020) (en banc) (explaining the difference between waiver and forfeiture). Imagine a defendant who waives the right to a jury trial, is convicted after a bench trial, and then argues on appeal that his only real hope would have been jury nullification, so the choice must be disregarded and a new trial held. Or imagine a defendant who signs a formal waiver of *Miranda* rights, confesses, and then rues the decision because his sentence exceeds what he expected when talking with the police. The imprudence of the confession would not make the deliberate choice less a waiver. Just so with a waiver of the right to contest a presentence report. Hindsight often makes us regret our decisions, but the difference between waiver and forfeiture lies in the *existence* of a decision, not in the decision's effects. "We do not ask whether a defendant's decision to waive is foolish." *United States v. Flores*, 5 F.3d 1070, 1078 (7th Cir. 1993).

What's more, we do not see any reason to doubt counsel's decision to let the offense score pass without objection. (In other words, we are not inviting a collateral attack based on ineffective assistance of counsel.) We have mentioned the existence of a lab report analyzing Lucero-Asencio's inventory. Some statements at oral argument suggested that the report

could have documented more than 20 kilograms of pure meth. We do not say that this is what it *does* show; after all, it is not in the record. But defense counsel knew what it *would* show, if introduced. Bad as things were for Lucero-Asencio at level 38, they could have been worse had larger pure quantities been documented. Keeping that report out of evidence may have been the best thing counsel could have done for the client. Its absence set up the argument for a sentence at the low end of the Guideline range, which he received.

And suppose we were to agree with Lucero-Asencio that what happened at sentencing is reviewable under the plain-error standard (rather than not reviewable at all, given waiver). To show plain error, a defendant must establish an effect on substantial rights, which generally entails demonstrating prejudice, among other things. See, e.g., *Greer v. United States*, 593 U.S. 503, 507–08 (2021); *United States v. Olano*, 507 U.S. 725, 734–35 (1993); *United States v. Page*, 123 F.4th 851, 864–68 (7th Cir. 2024) (en banc). That burden is on the appellant, not the prosecutor. *Greer*, 593 U.S. at 508; *Olano*, 507 U.S. at 734. To show an effect on his substantial rights, Lucero-Asencio would have needed to put the lab report into evidence through a post-sentencing addition to the record and then demonstrate how those details would have helped him. Yet his appellate lawyer has not done this. So whether we tackle this appeal through the lens of waiver or that of plain error, the 324-month sentence is invulnerable.

AFFIRMED