[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

Nos. 19-14279 & 22-12968

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JAMAAL A. HAMEEN,
a.k.a. Charles Flowers,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:18-cr-00115-MMH-JBT-1

————————————

Before LAGOA, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Jamaal Abu Talib Hameen appeals his conviction and sentence for possession of a firearm by a convicted felon.[1]  First, he argues that the district court erred in permitting him to proceed *pro se* at sentencing without conducting a second *Faretta*[2] hearing.  Second, he argues that the district court abused its discretion by finding that he had failed to show excusable neglect for his untimely *Rehaif*[3] motion for a judgment of acquittal or, in the alternative, for a new trial.  Third, he contends that the omission of the knowledge-of-status element from the indictment and jury instructions constituted plain error that prejudiced his substantial rights and infected the fairness, integrity, or public reputation of the proceedings.  Fourth, he contends that 18 U.S.C. § 922(g) is an unconstitutional exercise of Congress's authority under the Commerce Clause.  Fifth, Hameen contends that the district court erred when it determined that his prior Florida conviction for aggravated assault was a "violent felony" under the Armed Career Criminal Act ("ACCA") and a "crime of violence" under

———

[1]  We granted Hameen's motion to consolidate appeal No. 22-12968 with his direct appeal, No. 19-14279.

[2]  *Faretta v. California*, 422 U.S. 806 (1975).

[3]  *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

the Sentencing Guidelines. Sixth, he contends that the district court erred in determining that his prior Florida drug convictions, pursuant to Fla. Stat. § 893.13, were "serious drug offenses" under the ACCA and "controlled substance offenses" under U.S.S.G. § 2K2.1(a)(2). Finally, he contends that his ACCA-enhanced sentence is unconstitutional.

## I. DISCUSSION

### A. Second *Faretta* Hearing

A district court's conclusion that a defendant's waiver of his Sixth Amendment right to counsel was knowing and voluntary is a mixed question of law and fact that we review *de novo*. *United States v. Garey*, 540 F.3d 1253, 1268 (11th Cir. 2008) (*en banc*). The government bears the burden of proving the waiver was valid in a case on direct appeal. *Id.* We review this de novo. *United States v. Hakim*, 30 F.4th 1310, 1318 (11th Cir. 2022).

A defendant's right to self-representation is implicit in the Sixth Amendment. *Faretta*, 422 U.S. at 819. To do so, the defendant must knowingly and intelligently waive his right to counsel and must be made aware of the dangers and disadvantages of self-representation. *Id.* at 835. However, the right to self-representation is not absolute. *Indiana v. Edwards*, 554 U.S. 164, 171 (2008). A trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. *Faretta*, 422 U.S. at 834 n.46; *see also United States v. McLeod*, 53 F.3d 322, 325 (11th Cir. 1995) (stating that "a de-

fendant who misbehaves in the courtroom may forfeit his constitutional right to be present at trial").

The "ideal method of assuring that a defendant understands the consequences of a waiver is for the trial court to conduct a pretrial hearing at which the district court should inform the defendant of the nature of the charges against him, possible punishments, basic trial procedure and the hazards of representing himself." *Garey*, 540 F.3d at 1266 (quotation marks omitted). However, failing to hold a *Faretta* hearing is not an error as a matter of law if the record demonstrates that the defendant knowingly and voluntarily elected to represent himself. *Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir. 2002). We have observed that the ultimate test is the defendant's understanding, stating that a waiver may be valid where the record establishes that the defendant understood the risks of self-representation and freely chose to face them. *United States v. Owen*, 963 F.3d 1040, 1049 (11th Cir. 2020).

Although we have not yet addressed in a published opinion the continuing validity of a valid waiver, several circuit courts have held that a valid waiver remains in effect at subsequent proceedings in the absence of an explicit revocation by the defendant or a sufficient change of circumstances that would suggest that the district court should make a renewed inquiry of the defendant. *See, e.g., United States v. Hantzis*, 625 F.3d 575, 581 (9th Cir. 2010) (persuasive authority) (stating that no federal circuit that has considered the issue "has held that renewed *Faretta* warnings

are required at each subsequent court proceeding"); *United States v. McBride*, 362 F.3d 360, 367 (6th Cir. 2004) (persuasive authority) (adopting the rule that "a defendant's waiver of counsel at trial carries over to subsequent proceedings absent a substantial change in circumstances"); *United States v. Unger*, 915 F.2d 759, 762 (1st Cir. 1990) (persuasive authority) (holding that the district court was free to find that the defendant's earlier waiver was still in force at the sentencing hearing in the absence of intervening events); *United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir. 1989) (persuasive authority) ("Once the defendant has knowingly and intelligently waived his right to counsel, only a substantial change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver."); *Panagos v. United States*, 324 F.2d 764, 765 (10th Cir. 1963) (persuasive authority) (concluding that there were no facts or circumstances preventing "the initial waiver of the right to counsel, knowingly and intelligently made, from extending to and being fully effective at the time of sentencing"); *Davis v. United States*, 226 F.2d 834, 840 (8th Cir. 1955) (persuasive authority) (holding that defendant's waiver of counsel when pleading guilty was an implied waiver as to any subsequent proceedings, including sentencing four days later).

We have recognized that a valid waiver of counsel may occur not only when a cooperative defendant affirmatively invokes his right to self-representation, but also when an uncooperative defendant rejects the only counsel to which he is constitutionally

entitled, understanding his only alternative is self-representation. *Garey*, 540 F.3d at 1265. The defendant filed a motion to disqualify his counsel and substitute different counsel based on purported irreconcilable differences and conflicts of interest. *Id.* at 1259. After a hearing, the trial court denied the defendant's motion and told him he could either accept his court-appointed counsel or proceed *pro se*. *Id.* After further colloquy in which the defendant repeatedly refused to waive his right to counsel but also refused to let his court-appointed counsel represent him, the defendant stated he was involuntarily electing to represent himself, and the district court ultimately found that he had knowingly and voluntarily decided to proceed *pro se*. *Id.* at 1259–60. We stated that, when an indigent defendant rejects competent, conflict-free counsel, he may waive his right to counsel "by his uncooperative conduct, so long as his decision is made with knowledge of his options and the consequences of his choice." *Id.* at 1266. We characterized our holding as merely recognizing that, "in some instances, a defendant's conduct will reveal a voluntary decision to choose the path of self-representation over the continued assistance of counsel." *Id.*

We have further stated that "[a] defendant cannot use the right to counsel as a means to manipulate the court and cause delay" and "may not be put to service as a means of delaying or trifling with the court." *United States v. Graham*, 643 F.3d 885, 894 (11th Cir. 2011) (quotation marks omitted). Evidence of a defendant's manipulation or intentional delay implies his greater

understanding of the proceedings and an understanding of the risks and complexities of a criminal trial. *Owen*, 963 F.3d at 1051–52.

In *McLeod*, the defendant engaged in "abusive, threatening, and coercive" conduct toward his second appointed counsel, which caused counsel to move to withdraw. 53 F.3d at 326. The district court did not allow the defendant to testify at the hearing held on counsel's motion after he refused to take an oath, and the defendant requested a third attorney after the hearing. *Id.* We held that, even though the district court did not warn the defendant that his misbehavior may lead to his self-representation, the district court properly concluded that the defendant had forfeited his right to counsel. *Id.*

Here, the district court did not err in failing to conduct a second *Faretta* hearing, because Hameen's alleged mental health issues did not rise to the level of an intervening event that sufficiently changed his prior waiver to the point that it was undermined. First, the record indicates that Hameen did not have a history of serious mental health issues. He testified at the *Faretta* hearing that, besides a brief stint in counseling for depression in 2006, he had no history of mental illness. He also denied any psychiatric or psychological treatment and testified that he periodically obtained religious counseling, not professional counseling. Notably, the unobjected-to facts in the PSI stated that Hameen was diagnosed with a personality disorder while enlisted in the military and was discharged after becoming medically unstable. But

the probation officer did not receive a response to a request for Hameen's military records and noted that Hameen told Dr. Demery during the competency evaluation that he was discharged for smoking marijuana, not mental illness. Although medical records showed that Hameen had previously been diagnosed with PTSD, Dr. Demery reported in his competency evaluation and testified at the competency hearing that Hameen did not have a history of serious mental illness that would serve as a basis to find him incompetent. And while Hameen's sister told the probation officer that Hameen suffered from mental illness, she was unable to cite a particular illness and repeatedly stated that he was "highly intelligent."

Next, the record shows that Hameen understood the nature and consequences of the proceedings. *Garey*, 640 F.3d at 1265. Hameen exhibited an understanding of the charges, possible punishments, basic trial procedure, and the hazards of representing himself. *Id.* at 1266. He testified that he had previously represented himself in several state-court criminal cases, including both misdemeanor and felony charges, had conducted at least five civil lawsuits pro se, and was familiarizing himself with the federal rules. While Dr. Demery stated that Hameen had "an inflated perception about his understanding of the law," he found that Hameen understood the nature and consequences of the proceedings against him, was capable of properly assisting in his defense, appreciated the possible penalties, understood the adversarial nature of the legal process, and had an adequate appreciation of the

range of plea options. After engaging with Hameen throughout numerous hearings and filings, the court repeatedly stated that he was "clearly very intelligent" and was "fully capable" of representing himself.

Further, the record does not directly support or imply that Hameen's mental capacity diminished throughout the proceedings such that his pre-trial waiver of counsel could no longer be considered to have been knowing and intelligent. His assertion before sentencing that he suffered from mental health issues for which he was on new medication did not constitute a change of circumstances that required the district court to conduct a second *Faretta* hearing. Hameen did not assert that he suffered from mental health issues that would prevent him from self-representation until after his fourth appointed counsel was permitted to withdraw prior to sentencing. He explained that he was on new medication that did not seem to be working and did not know whether he was "going or coming" because his body had not yet responded to the medication. Yet, his behaviors after the alleged change in circumstance do not reflect any change in his ability to understand the proceedings. To the contrary, Hameen subsequently raised multiple objections to his PSI, including objections to his classification as an armed career criminal, and arguments based upon *Rehaif*. The *Rehaif* objections especially demonstrate his continued understanding of the proceedings and awareness of changes in relevant law, as the Supreme Court issued its decision in *Rehaif* nearly four months after the jury con-

victed Hameen of possessing a firearm as a convicted felon. *Rehaif*, 139 S. Ct. 2191 (issued June 21, 2019).

Moreover, the sequence of events in this case strongly suggests that Hameen was engaging in calculated maneuvers designed to force the district court to delay the proceedings, which is a further implication of his continued understanding of the proceedings and their risks and complexities. *See Owen*, 963 F.3d at 1051–52. As noted by the district court, a criminal defendant may forfeit his right to counsel by virtue of his actions. *See McLeod*, 53 F.3d at 325 (holding that a defendant who is abusive towards his attorney may forfeit his right to counsel). Here, the record is rife with instances of Hameen engaging in behavior to force his several appointed counsel to withdraw and otherwise "manipulate the court and cause delay." *Graham*, 643 F.3d at 894. As the district court observed, Hameen also had a "pattern of raising issues at the eleventh hour."

By engaging in obstructionist misconduct, refusing the only counsel to which he was entitled, explicitly requesting to proceed pro se, and harassing his attorneys with lawsuits, interlocutory appeals claiming ineffective assistance, and threats of physical violence, Hameen forfeited his right to counsel. *Faretta*, 422 U.S. at 834 n.46; *Graham*, 643 F.3d at 894; *McLeod*, 53 F.3d at 325; *Garey*, 540 F.3d at 1265–66. Thus, the court did not err by failing to conduct a second *Faretta* hearing prior to sentencing because the record indicates that, throughout the entirety of his case before the

district court, Hameen understood the nature and consequences of the proceedings. *Garey*, 640 F.3d at 1265.

### B.  Untimely *Rehaif* Motion

We review a district court's denial of a motion on the grounds of untimeliness for abuse of discretion. *United States v. Snipes*, 611 F.3d 855, 864 (11th Cir. 2010).  A district court can abuse its discretion when it applies an incorrect legal standard, follows improper procedures in making the determination, or makes clearly erroneous factual findings.  *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005).  While we liberally construe the filings of *pro se* litigants, we still require conformity with procedural rules.  *See United States v. Padgett*, 917 F.3d 1312, 1316 n.3 (11th Cir. 2019).

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later."  Fed. R. Crim. P. 29(c)(1).  "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  *Id.* 33(b)(2).  The district court may extend the time for filing a motion after this period expires if the moving party failed to act due to excusable neglect.  Fed. R. Crim. P. 45(b)(1)(B).

Where a district court in a criminal proceeding determines "excusable neglect" in light of *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, the factors to consider in-

clude the following: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith. 507 U.S. 380, 395 (1993). The *Pioneer* standard is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* The Supreme Court accorded "primary importance" to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration. *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir 1996).

Here, the district court did not abuse its discretion in denying Hameen's October 10, 2019, *Rehaif* motion as untimely because he failed to show excusable neglect. First, as to Hameen's argument that the district court misapplied the law by failing to consider prejudice to the government, the main focus of the court's discussion as to Hameen's prejudice appears to have been in the context of its merits consideration, not in its consideration of the *Pioneer* factors. But, Hameen was not prejudiced by dismissal of his motion because the jury heard ample evidence to support a finding that he knew his prohibited status at the time he possessed the firearm. As to prejudice against the government, Hameen correctly notes on appeal that the government was aware of *Rehaif* prior to sentencing and its potential impact on his case. But, it had no reason to expect that he would file a motion just before sentencing based on his knowledge-of-status that would continue litigation if granted. *See Cheney v. Anchor Glass*

*Container Corp.*, 71 F.3d 848, 850 (11th Cir 1996) (holding the nonmovant was not prejudiced by the movant's six-day delay where the parties expected to continue litigating). Although prejudice is of "primary importance," the balance of the other *Pioneer* factors heavily weighs against a finding of excusable neglect. *See id.*

As to the second *Pioneer* factor, the length of the delay was extensive, as Hameen filed the motion more than seven months after the jury returned its verdict and over three months after the Supreme Court's decision in *Rehaif*. And its potential to interfere with the proceedings was amplified by his filing the motion only two business days before his sentencing hearing, which had already been continued by over a month. Therefore, the length of the delay and its potential impact on the proceedings would counsel against granting the request. *See Pioneer*, 507 U.S. at 395. Third, while Hameen raises his pro se status as an excuse for the delay, he filed several other pro se *Rehaif*-based motions months prior to his October 10 motion. But, regardless of those prior filings, his pro se status does not excuse his nonconformity with procedural rules, and he did not explain why he did not file his motion until two months after he forfeited his right to counsel. Moreover, his assertion on appeal that the timing of the *Rehaif* decision and his discovery of the superseding indictment were reasons for the delay is unpersuasive, as *Rehaif* was decided in July 2019 and he failed to raise the knowledge-of-status argument in any of his previous *Rehaif*-based motions. Finally, in light of the

whole record exhibiting Hameen's pattern of late filings and attempts to delay proceedings, the court properly found that he had not acted in good faith.

###    C.   Omission of Knowledge-of-Status from Indictment and Jury Instructions

We ordinarily review *de novo* whether an indictment is insufficient and whether the district court misstated the law in its jury instruction. *United States v. Steele*, 178 F.3d 1230, 1233 (11th Cir. 1999) (indictment); *United States v. Joseph*, 709 F.3d 1082, 1093 (11th Cir. 2013) (jury instruction).   However, we review challenges to an indictment and jury instructions not presented below for plain error. *United States v. Vernon*, 723 F.3d 1234, 1260–61 (11th Cir. 2013); *Joseph*, 709 F.3d at 1093.   In *Reed*, we reviewed for plain error new challenges to the indictment, jury instructions, and the sufficiency of the evidence that were based on *Rehaif*, which was decided after our initial opinion affirming the appellant's conviction. *United States v. Reed*, 941 F.3d 1018, 1020 (11th Cir. 2019); *see also Greer v. United States*, 141 S. Ct. 2090, 2096 (2021) (applying plain-error review to unpreserved knowledge-of-status challenges to the indictment and jury instructions based on *Rehaif*). In *Greer*, the Supreme Court held that, "[i]n felon-in-possession cases, a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon." *Greer*, 141 S. Ct. at 2100.

To demonstrate plain error, the appellant must show that an error occurred that was both plain and affected his substantial rights, meaning that he must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016). If the appellant does so, we may, at our discretion, correct the error if it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Reed*, 941 F.3d at 1021. The Supreme Court has instructed that appellate courts may consult the entire record, including the presentence investigation report ("PSI"), when considering the effect of a *Rehaif* instructional error on a defendant's substantial rights. *Greer*, 141 S. Ct. at 2098.

To be sufficient, an indictment must (1) present the essential elements of the charged offense; (2) notify the defendant of the charges to be defended against; and (3) enable the defendant to rely on a judgment under the indictment as a bar against future prosecutions for the same offense. *United States v. Wayerski*, 624 F.3d 1342, 1349 (11th Cir. 2010). This is sufficient to "satisfy the Sixth Amendment's guarantee of notice to the accused of the nature and the cause of the accusation, and the Fifth Amendment's assurance that a grand jury will return an indictment only when it finds probable cause for all elements of the crime." *Id.* Additionally, the indictment's specific reference to the statute upon which the charge is based adequately informs the defendant of the charge. *Id.* at 1349–50. An indictment also fulfills the constitutional standard when it tracks the statute's wording, as long as the

language sets forth the essential elements of the crime. *Id.* at 1350. Failure to allege a *mens rea* element is a non-jurisdictional error. *United States v. Brown*, 752 F.3d 1344, 1353–54 (11th Cir. 2014).

Section 922(g)(1) makes it unlawful for any person, "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). Section 924(a)(2) provides that a defendant who knowingly violates § 922(g) is subject to up to ten years' imprisonment. *Id.* § 924(a)(2). A statutory minimum of 15 years' imprisonment applies to "a person who violates section 922(g)" and qualifies as an armed career criminal. *Id.* § 924(e)(1).

In *Rehaif*, the Supreme Court held that, "[i]n a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. A defendant's knowledge of his status can be inferred from circumstantial evidence. *Id.* at 2198 (citing *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994)).

In *Moore*, we rejected the argument that *Rehaif* created a jurisdictional defect in an indictment, holding that an indictment's omission of a statement that a defendant knew that he was a felon prohibited from possessing a firearm was a non-jurisdictional omission. *United States v. Moore*, 954 F.3d 1322, 1336–37 (11th

Cir. 2020), *cert. denied*, 141 S. Ct. 2819 (2021) (stating "the law is clear: the omission of an element in an indictment does not deprive the district court of subject matter jurisdiction"); *see also United States v. Morales*, 987 F.3d at 978–79 (11th Cir. 2021) (holding that the indictment's omission of the knowledge-of-status element did not deprive the district court of subject-matter jurisdiction).

Following *Rehaif*, we concluded in *Reed* that the defendant had established that errors had occurred with respect to his indictment and at his trial that *Rehaif* made plain because his indictment failed to allege that he knew that he was a felon, the jury was not instructed to find that he was a felon, and the government was not required to prove that he was felon. *Reed*, 941 F.3d at 1021. However, we also concluded that the defendant could not "prove that the errors affected his substantial rights or the fairness, integrity, or public reputation of his trial" because the record established that the jury could conclude that he knew that he was a felon at the time that he possessed the gun. *Id.* We specifically pointed to the parties' stipulation that the defendant had been convicted of a felony offense in the past and that he had not had his right to possess a firearm restored, his admission on cross-examination that he knew that he was not permitted to have a gun, and his failure to object to the PSI's statement that he had served at least 18 months in prison prior to his arrest for firearm possession. *Id.* at 1021–22.

Under our prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). To overrule a prior decision, the Supreme Court or *en banc* decision must be clearly on point. *Id.* There is no exception to the rule based upon an overlooked or misinterpreted precedent reason or a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time. *United States v. Fritts*, 841 F.3d 937, 942 (11th Cir. 2016). However, "when a precedent of the Supreme Court has direct application, we must follow it." *United States v. Johnson*, 921 F.3d 991, 1001 (11th Cir. 2019) (*en banc*) (quotation marks and brackets omitted).

Arguments raised for the first time in a reply brief are deemed abandoned. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682–83 (11th Cir. 2014).

Here, Hameen's argument that the district court erred in declining to dismiss his indictment as jurisdictionally defective is foreclosed by our binding precedent in *Moore*. Hameen cannot satisfy plain-error review because, while an error that was plain did occur, he fails to show that the error affected his substantial rights. *See Reed*, 941 F.3d at 1020–22. While Hameen argues that the deficiencies in the indictment violated his Fifth and Sixth Amendment rights and this substantially affected his rights, this Court has held that an indictment that specifically mentions a

statute will adequately inform the defendant of the charges. *See Wayerski*, 624 F.3d at 1349–50. Hameen's indictment specifically listed 18 U.S.C. §§ 922(g)(1) and 924(e). And the indictment tracked the language of § 922(g)(1) and cited 15 of his prior convictions and the dates on or about when the felonious conduct occurred. Nonetheless, in light of *Reed* and *Rehaif*, an error that was plain occurred because the indictment did not require that the government prove that Hameen knew that he belonged to a category of people prohibited from possessing a firearm and the jury was not instructed that, in order to find him guilty, it needed to find beyond a reasonable doubt that he knew he was a convicted felon at the time he possessed the firearm. *See Reed*, 941 F.3d at 1021; *Rehaif*, 139 S. Ct. at 2200.

Hameen's arguments on appeal fail to meet the requirement set by the Supreme Court in *Greer* to show that the error affected his substantial rights. *See Greer*, 141 S. Ct. at 2100. In his supplemental filing, Hameen avers that he met the *Greer* requirement by arguing on appeal that, had the indictment and jury instructions included the knowledge-of-status element, he would have presented evidence at trial that he did not know he was a felon. However, the representation to which he refers was made in his reply brief, not his initial brief, and this Court declines to address arguments raised for the first time in a reply brief. *See Sapuppo*, 739 F.3d at 682–83. Accordingly, because his representation on appeal speaks to the mere possibility that he could satisfy the requirement in *Greer* and he makes no such argument or

representation in his initial brief, like the defendants in *Greer*, Hameen cannot satisfy plain-error review. *See Greer*, 141 S. Ct. at 2100.

Even if this Court were to consider the merits, Hameen cannot show a reasonable probability that, but for the errors, the outcome of his trial probably would have been different. *Molina Martinez*, 136 S. Ct. at 1343. Hameen's indictment listed 15 felony convictions that occurred prior to his possession in the instant case. And the court at sentencing admitted certified copies of Hameen's three felony judgments that were relied upon in the PSI's classification of him as an armed career criminal after the government presented evidence matching his fingerprints to each of the judgments of conviction. The jury could have inferred that Hameen knew he was a felon from his stipulation that he was a convicted felon, his testimony that he had been convicted of ten prior felony convictions in the preceding ten years (admitting the fact of each conviction, date, and nature of the offense), and his testimony as to his 2017 Florida conviction for selling heroin. Moreover, the jury was permitted to reject Hameen's explanation as to picking up a jacket at random without knowing it contained a firearm and infer his knowledge-of-status from circumstantial evidence of the officers' testimony that he possessed the firearm tucked under his arm and attempted to avoid arrest by turning away from Driggers when the officer reached out to arrest him for trespassing. *Rehaif,* 139 S. Ct. at 2198, 2200 (stating knowledge of status can be inferred from circumstantial evi-

dence).  Despite Hameen not testifying to his knowledge of his felon status at trial, the jury could reasonably have concluded, if presented with proper jury instructions, that he knew he had been convicted of at least one crime punishable by a term exceeding one year.  *See Reed*, 941 F.3d at 1021–22.  Therefore, he cannot show that the errors affected his substantial rights or the fairness, integrity, or public reputation of his trial.  *Greer*, 141 S. Ct. at 2100; *Reed*, 941 F.3d at 1021–22.

### D. Constitutionality of § 922(g)

We ordinarily review constitutional challenges to statutes *de novo*.  *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).  However, where a constitutional challenge to a statute is raised for the first time on appeal, we review only for plain error.  *Id.*

Pursuant to § 922(g)(1), it is unlawful for a convicted felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1).

In *Lopez*, the Supreme Court held that the Gun-Free School Zones Act of 1990 was an invalid exercise of Congress's Commerce Clause power, in part, because the statute could not be sustained on the reasoning that the regulated activities, in the aggregate, had a substantial effect on interstate commerce.  *Unit-*

ed States v. Lopez, 514 U.S. 549, 561 (1995).  In addition, the Supreme Court emphasized that the challenged statute "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affect[ed] interstate commerce."  Id.

Since Lopez, we have repeatedly upheld § 922(g) as a constitutional exercise of Congress's power under the Commerce Clause.  See Wright, 607 F.3d at 715 (citing United States v. Nichols, 124 F.3d 1265 (11th Cir. 1997), and United States v. McAllister, 77 F.3d 387 (11th Cir. 1996)); see also United States v. Scott, 263 F.3d 1270, 1273 (11th Cir. 2001) (holding that "the jurisdictional element of the statute, i.e., the requirement that the felon 'possess in or affecting commerce, any firearm or ammunition,' immunizes § 922(g)(1) from [a] facial constitutional attack").  We have also held that § 922(g) is constitutional as applied where the government proved a "minimal nexus" to interstate commerce by demonstrating that the firearm had traveled in interstate commerce.  Wright, 607 F.3d at 715–16 (quotation marks omitted); see also United States v. Jordan, 635 F.3d 1181, 1189 (11th Cir. 2011) (holding that § 922(g) is not unconstitutional as applied to "a defendant who possessed a firearm only intrastate" when the government demonstrated that the firearm moved in interstate commerce).  In Wright, we determined that firearms that were manufactured in Massachusetts and later discovered in the defendant's possession in Florida necessarily traveled in interstate

commerce, which satisfied the minimal-nexus requirement. 607 F.3d at 716.

Here, our binding precedent forecloses Hameen's argument that § 922(g) is an unconstitutional exercise of Congress's authority under the Commerce Clause.

### E.   Florida Aggravated Assault Conviction

We review *de novo* a district court's conclusion that a prior conviction is a violent felony within the meaning of the ACCA, *United States v. Oliver*, 962 F.3d 1311, 1316 (11th Cir. 2020), or a crime of violence under the Guidelines, *United States v. Rosales-Bruno*, 676 F.3d 1017, 1020 (11th Cir. 2012). We review for plain error an appellant's argument that a prior Florida conviction for aggravated assault is not a violent felony under the ACCA because it can be committed with a *mens rea* of recklessness where the appellant failed to raise the issue before the district court. *United States v. Innocent*, 977 F.3d 1077, 1085 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2827 (2021).

The ACCA caps a federal prison sentence for possessing a firearm as a felon under 18 U.S.C. § 922(g)(1) at ten years, except when the person being sentenced has three or more prior convictions for violent felonies or serious drug offenses, which increases the minimum prison sentence to 15 years. 18 U.S.C. § 924(a)(2), (e)(1). The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012). The Supreme Court in *Johnson* held that the residual clause of the ACCA is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a violent felony. *Johnson v. United States*, 576 U.S. 591, 597–99, 606 (2015). The Court clarified that, in holding that the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony. *Id.*

A "crime of violence" for purposes of § 4B1.1(a) is defined in § 4B1.2(a), the career-offender provision, and includes any offense under federal or state law, punishable by imprisonment for a term exceeding one year that has, as an element, the "use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. §§ 4B1.1, comment. (n.1), 4B1.2(a)(1) (elements clause). Because the elements clauses in § 4B1.2(a) and

the ACCA "are virtually identical," we look to cases applying the ACCA for guidance when considering whether an offense qualifies as a crime of violence under the Sentencing Guidelines. *United States v. Ochoa*, 941 F.3d 1074, 1107 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2553 (2020).

Florida aggravated assault is an assault "[w]ith a deadly weapon without intent to kill" or "[w]ith an intent to commit a felony." Fla. Stat. § 784.021(1). An assault, in turn, is defined by Florida law as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." *Id.* § 784.011(1).

In *Turner*, we held that Florida aggravated assault categorically qualifies as a violent felony under the ACCA's elements clause. *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1338 (11th Cir. 2013), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015). In *Golden*, we reaffirmed the holding in *Turner* as binding for the determination that a conviction for Florida aggravated assault constitutes a crime of violence under the similarly worded elements clause in the Guidelines. *United States v. Golden*, 854 F.3d 1256, 1256–57 (11th Cir. 2017) (stating "*Turner* is binding"); *see also Innocent*, 977 F.3d at 1085 (reaffirming *Turner*).

In June 2021, while Hameen's appeal was pending, the Supreme Court in *Borden* held that a criminal offense with a *mens*

*rea* of recklessness does not qualify as a "violent felony" under the ACCA's elements clause. *Borden v. United States*, 141 S. Ct. 1817, 1834 (2021). Writing for four of the Justices, Justice Kagan reasoned that the phrase "against another" in the elements clause, which modifies "the use of force," requires that the perpetrator direct his action at or target another individual and that reckless conduct is not aimed in that prescribed manner. *Id.* at 1826. Concurring in judgment and writing separately, Justice Thomas further reasoned that a crime that can be committed through mere recklessness does not have as an element the "use of physical force" because that phrase has a well-understood meaning applying only to intentional acts designed to cause harm. *Id.* at 1835 (Thomas, J., concurring).

After *Borden*, this Court certified questions to the Florida Supreme Court regarding the *mens rea* required for a Florida aggravated assault conviction. *Somers v. United States*, 15 F.4th 1049 (2021). The Florida Supreme Court held the Florida's aggravated assault statute demands specific intent to direct a threat at another person and therefore cannot be violated by a reckless act. *Somers v. United States*, 355 So. 3d 887, 891 (Fla. 2022). Based on the Florida Supreme Court's answer to our certified questions that aggravated assault under Florida law requires a *mens rea* of at least knowing conduct, we held aggravated assault under Florida law qualifies as an ACCA predicate offense under *Borden*. *Somers v. United States*, 66 F.4th 890, 891 (11th Cir. 2023). Be-

cause *Somers* holds that a Florida aggravated assault conviction is a crime of violence under ACCA, Hameen's challenge fails.

### F.  Serious Drug Offense

We review *de novo* whether a conviction qualifies as a serious drug offense under the ACCA.  *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016).  We also review *de novo* whether a defendant's prior conviction qualifies as a controlled substance offense under U.S.S.G. § 4B1.2(b).  *United States v. Lange*, 862 F.3d 1290, 1293 (11th Cir. 2017).

To qualify as a "serious drug offense" under the ACCA, the prior state conviction must (1) involve manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance, and (2) carry a maximum prison term of ten years or more.  18 U.S.C. § 924(e)(2)(A)(ii).

Section 2K2.1 of the Sentencing Guidelines provides for a base offense level of 24 if the defendant committed the instant offense after having previously been convicted of at least 2 crimes of violence or controlled substance offenses.  U.S.S.G. § 2K2.1(a)(2).  The term "controlled substance offense" carries the same meaning for purposes of § 2K2.1 as it does under the career-offender guidelines in § 4B1.2.  *Id.* § 2K2.1, comment. (n.1).  "Controlled substance offense" is defined, in § 4B1.2, as an offense under federal or state law, punishable by imprisonment for a term that is greater than one year that prohibits (1) the manufacture, distribution, import, export, or dispensing of a controlled substance or

(2) the possession of a controlled substance with the intent to manufacture, import, export, distribute, or dispense.    *Id.* § 4B1.2(b).

Section 893.13 of the Florida Statutes criminalizes the sale, manufacture, and delivery of a controlled substance, as well as possession of a controlled substance with intent to sell, manufacture, or deliver.  Fla. Stat. § 893.13(1)(a)(1).  Knowledge of the illicit nature of the substance is not an element of the offense.  Fla. Stat. § 893.101.

In *Smith*, we held that Fla. Stat. § 893.13(1) is both a "serious drug offense," under 18 U.S.C. § 924(e)(2)(A), and a "controlled substance offense," under U.S.S.G. § 4B1.2(b), stating "[n]either definition requires that a predicate state offense includes an element of *mens rea* with respect to the illicit nature of the controlled substance."  775 F.3d at 1268 (quotation marks omitted).  We have subsequently reaffirmed *Smith*'s holding as binding in several published decisions.  *See United States v. Pridgeon*, 853 F.3d 1192, 1198 (11th Cir. 2017) (rejecting the argument that *Smith* was wrongly decided and affirming *Smith*'s holding that convictions under Fla. Stat. § 893.13 qualify as controlled substance offenses under the Guidelines); *United States v. Bishop*, 940 F.3d 1242, 1253–54 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 1274 (2020) (same).

In *Shular*, the Supreme Court held that a court determining whether an offense qualifies as a serious drug offense need only consider whether the offense's elements "necessarily entail" the

19-14279                 Opinion of the Court                          29

types of conduct identified in the ACCA's definition of a serious drug offense, rather than engage in a "generic-offense matching exercise." 140 S. Ct. at 783–84 (quotation marks omitted) (affirming our decision that the petitioner's prior convictions under Fla. Stat. § 893.13(1)(a) qualified as serious drug offenses under the ACCA, noting we based our holding in the case on *Smith*). We have reaffirmed after *Smith* that the argument that a prior conviction under Fla. Stat. § 893.13(1) cannot qualify as a serious drug offense under the ACCA because the state offense lacks a *mens rea* element is foreclosed by our precedent in *Smith* and the Supreme Court's precedent in *Shular*. *United States v. Smith*, 983 F.3d 1213, 1223 (11th Cir. 2020).

Here, Hameen's challenge that his Florida drug convictions under Fla. Stat. § 893.13 do not qualify as controlled substance offenses under the Guidelines or serious drug offenses under the ACCA is foreclosed by our binding precedent in *Smith*.[4]

---

[4] Hameen filed additional briefing on this issue after the release of *United States v. Jackson*, 36 F.4th 1294 (11th Cir. June 10, 2022) ("*Jackson I*"), where we held that certain Florida cocaine-related offenses, like Hameen's 2008 conviction under Fla. Stat. § 893.13(a)(1) for sale or delivery of cocaine, are not "serious drug offense[s]" under the ACCA because they include a substance, namely ioflupane, that is not included in the federal controlled substances definition. However, this court vacated that opinion and then issued a new opinion, 55 F.4th 846 (11th Cir. Dec. 12, 2022), cert. granted 2023 WL 3440568 (May 15, 2023) ("*Jackson II*"), where we held that "ACCA's definition of a state 'serious drug offense' incorporates the version of the federal controlled-substances schedules in effect when the defendant was convicted of the prior state drug offense." *Id.* at 854. At the time of Hameen's

30                          Opinion of the Court                          19-14279

G.    ACCA Enhanced Sentence

Generally, all elements of a crime must be alleged by indictment and proven beyond a reasonable doubt. *Smith*, 775 F.3d at 1266. However, the Supreme Court in *Almendarez-Torres* carved out an exception for prior convictions, holding that the government need not prove beyond a reasonable doubt that a defendant had prior convictions or allege them in the indictment in order to use those convictions to enhance a defendant's sentence. *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998); *see Apprendi v. New Jersey*, 530 U.S. 466, 489–90 (2000) (declining to revisit the exception in *Almendarez-Torres*). We have repeatedly held that *Almendarez-Torres* forecloses the argument that an ACCA enhancement was unconstitutionally applied because the fact of a prior conviction was not alleged in the indictment or proven to a jury. *See, e.g.*, *United States v. Deshazior*, 882 F.3d 1352, 1358 (11th Cir. 2018); *Smith*, 775 F.3d at 1266. We have also "repeatedly rejected the argument that judicially determining whether prior convictions were committed on different occasions from one another for purposes of the ACCA violates a defendant's

---

2008 Florida cocaine conviction, both the Florida and federal controlled substances schedules included ioflupane.

This *Jackson* issue was raised by Hameen for the first time on appeal, and even then only after both his initial and reply briefs were filed, thus raising issues of preservation or forfeiture. We need not decide the preservation/forfeiture issues because our *Jackson II* decision is binding and forecloses Hameen's new challenge based on the *Jackson* issue.

Fifth and Sixth Amendment rights." *United States v. Dudley*, 5 F.4th 1249, 1260–61 (11th Cir. 2021).

Here, Hameen's argument that his ACCA-enhanced sentence violates the Fifth and Sixth Amendments because the ACCA's requirements were not charged in the indictment or proven to a jury beyond a reasonable doubt is foreclosed by the Supreme Court's decision in *Almendarez-Torres* and our binding precedent applying *Almendarez-Torres*.

### H. Consolidated Appeal

We consolidated Hameen's pro se 2022 appeal (Appeal No. 22-12968) of two orders with his direct appeal. The 2022 appeal challenges two orders: a magistrate judge's August 1, 2022, order denying his amended motion to appoint counsel and request for an indicative ruling concerning whether Hameen should receive a reduction in his sentence based on our June 10, 2022, decision in *United States v. Jackson* ("*Jackson I*"), and the district court's August 17, 2022, order overruling Hameen's objections to the magistrate judge's order.

We grant the Government's motion to dismiss this appeal. The challenged orders did not constitute final postjudgment orders because they did not resolve all of the issues raised in the amended motion to appoint counsel that initiated the postjudgment proceedings. In that motion, Hameen sought relief from his sentence under *Jackson I* and counsel to help him obtain that re-

lief. Shortly after filing that initial motion, he filed a related motion more explicitly seeking that relief—vacatur of the sentence under *Jackson*—that was pending before this Court when Hameen filed his notice of appeal.[5] The orders addressing only the initial motion thus did not end the postjudgment proceedings. *See* 28 U.S.C. § 1291; *Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012); *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010). The orders were also not appealable under the collateral order doctrine because the issues raised in the amended motion to appoint counsel were capable of review after the district court issued a final postjudgment order.[6] *See Plaintiff A v. Schair*, 744 F.3d 1247, 1252-53 (11th Cir. 2014); *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430-31 (1985) (stating that the collateral order doctrine is narrow, and its "reach is limited to trial court orders affecting rights that will be irretrievably lost in the absence of an immediate appeal").

## IX.

For the foregoing reasons, we affirm Hameen's conviction and sentence. We dismiss the consolidated appeal.

---

[5] That is, appointed counsel had already filed a supplemental brief in Hameen's direct appeal seeking that same relief under the then-extant *Jackson* decision, 36 F. 4th 1294.

[6] On March 20, 2023, the district court entered a final postjudgment order denying an evidentiary hearing and vacatur of the sentence, as well as several other related postjudgment motions.

19-14279                    Opinion of the Court                             33

AFFIRMED in part, DISMISSED in part.[7]

---

[7] All pending motions are DENIED.